UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BATTA FULKERSON, LLP,<br>Plaintiff,<br>v.<br>BULLDOG LAW, P.C.,<br>Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 25-cv-00551-AGS-GC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR FURTHER SANCTIONS**<br><br>**[ECF No. 85]** |

Before the Court is a Motion for Further Sanctions ("Motion") filed by Plaintiff Batta Fulkerson, LLP ("Plaintiff"). (ECF No. 85.) Defendant Bulldog Law, P.C. ("Defendant") filed an opposition (ECF Nos. 89, 90) and Plaintiff filed a reply (ECF No. 91). In the Motion, Plaintiff requests that the Court (1) adopt the special master's report and recommendation (ECF No. 81), (2) impose terminating sanctions, and/or (3) impose monetary sanctions. (ECF No. 85 at 2.) In the alternative to terminating sanctions, Plaintiff requests that the Court reopen discovery for a limited purpose. (*Id.* at 3.) For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART**.

# I. BACKGROUND

## A. Relevant Factual Background

On March 7, 2025, Plaintiff, a San Diego, California based law firm, filed suit against Defendant, a Glendale, California based law firm. (ECF No. 1.) Plaintiff alleges it "has advertised as 'the bulldog lawyers' since the firm's inception in 2016." (*Id.* ¶ 12) It claims to be "the lawful owner of U.S. Registration No. 6304103 for the BULLDOG ATTORNEYS Mark, registered March 30, 2021, for legal services, including legal advice, legal information services, and providing information in the field of law in Class 045," and two registered design marks (Reg. No. 5295946 and Reg. No. 6152296) "for use in connection with 'attorney services' and 'legal advice; legal information services; legal services; providing information in the field of law,' respectively, in International Class 045," which "were first used in commerce in 2017." (*Id.* ¶¶ 9, 11.) Plaintiff also alleges it "used the word marks, THE BULLDOG LAWYER, and INJURED IN AN ACCIDENT? HIRE A BULLDOG ATTORNEY, in commerce in connection with, 'attorney services; legal services; legal advisory services; legal consultation services; legal information services; legal support services; information, advisory and consultancy services relating to legal matters; pro bono legal services,' in International Class 045, since at least May 10, 2016," and has applications for these marks pending before the U.S. Patent and Trademark Office (Serial Nos. 98761975 and 98761983). (*Id.* ¶ 12.)

Plaintiff alleges Defendant "was formed on August 30, 2022, and commenced operation as a law firm under the name, BULLDOG LAW at some point thereafter." (*Id.* ¶ 18.) Plaintiff alleges Defendant's "unauthorized use of marks substantially similar to Plaintiff's trademarks in connection with services identical to those provided by Plaintiff" supports the following causes of action: (1) Trademark Infringement Under the Lanham Act; (2) Common Law Trademark Infringement; (3) Unfair Competition Under the Lanham Act; (4) False Designation of Origin Under the Lanham Act; (5) Violation of 15 U.S.C. § 1125(D); (6) Unfair Competition Under Cal. Bus. & Prof. Code § 17200; and (7) Unjust Enrichment. (*Id.* ¶¶ 1, 32–71.)

Defendant filed its Answer and Counterclaim on April 7, 2025, and Amended Answer and Counterclaim on April 28, 2025. (ECF Nos. 6, 8.) Defendant generally denies the validity of Plaintiff's claimed marks and seeks "a declaration that its use of 'BULLDOG LAW' does not infringe Plaintiff's alleged marks, and [requests that the court] cancel Plaintiff's registered trademarks insofar as the court finds that they are generic, descriptive without secondary meaning, or abandoned." (ECF No. 8 ¶ 60.) Defendant also alleges "Plaintiff's attempt to police the legal profession for uses of the term 'Bulldog,'" constitutes unfair business acts and practices. (*Id.* ¶ 83.) Defendant contends these facts support the following causes of action: (1) Declaratory Judgment of Non-Infringement and Cancellation of Registered Marks; (2) Violation of the First Amendment and California Article I, § 2 of the California Constitution; (3) Unfair Competition Under Lanham Act, 15 U.S.C. § 1125(a); (4) Unfair Competition Under Cal. Bus. & Prof. Code § 17200 and Common Law; and (5) Unjust Enrichment. (*Id.* ¶¶ 59–92.)

**B. Discovery**

On June 13, 2025, Plaintiff served its First Set of Requests for Production ("RFPs") on Defendant. (ECF No. 58-2.) On July 14, 2025, Plaintiff served its Revised First Set of Interrogatories ("Revised Interrogatories").[1] (ECF No. 58-3.)

On August 8, 2025, the Court conducted a Status Conference, during which Plaintiff's counsel brought to the Court's attention concerns about Defendant's discovery responses, or lack thereof, and counsel's refusal to meet and confer about discovery or a protective order. (ECF No. 31.) The Court then ordered counsel to, *inter alia*, "meet and confer regarding: (1) the adequacy of defendant's initial disclosures and discovery responses no later than August 13, 2025; and (2) a protective order no later than August 15, 2025." (*Id.*)

---

[1] Plaintiff's Revised First Set of Interrogatories were propounded after Defendant objected wholesale to providing a substantive response to any interrogatory in the First Set of Interrogatories Plaintiff served on June 13, 2025. (ECF No. 58 at 3.)

On August 29, 2025, "[a]fter receiving an update from counsel regarding a dispute about [D]efendant's responses to [Plaintiff's RFPs], the Court order[ed] [D]efendant [to] make a supplemental production on or before September 2, 2025." (ECF No. 36.)

On September 10, 2025, the parties lodged by email a Joint Discovery Statement informing the Court that counsel had met and conferred regarding Defendant's document production and failure to respond to the Revised Interrogatories but had reached an impasse. (ECF No. 42 at 4–27.)

On September 19, 2025, the Court conducted a Discovery Conference and ordered:

> Defendant must provide full and complete formal responses to plaintiff's Revised First Set of Interrogatories on or before October 3, 2025. [] Defendant has not shown good cause for its failure to timely respond and, therefore, has waived all objections to these discovery requests. *See* FRCP 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.")
>
> Defendant must provide a formal response to plaintiff's [RFPs] and produce non-privileged documents responsive to RFP Nos. 11, 12, and 26 on or before October 3, 2025. [] Defendant must also produce non-privileged documents responsive to RFP 14 on or before October 3, 2025, unless the parties agree to stipulate to facts relevant to defendant's ownership and registration of thebulldog.law domain in lieu of production. *Id.*
>
> If defendant withholds any documents based on objection, its response "must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). If any documents are withheld "based on a claimed protection or privilege [defendant] must identify the withheld documents in a manner such that the requesting party can reasonably identify and challenge the withholding of the documents." Chambers Rules for Civil Pretrial Proceedings, IX.

(ECF No. 42 at 1-2.)

On January 19, 2026, Plaintiff filed a Motion for Sanctions alleging Defendant "has never served any response – substantive or otherwise – to the Revised Interrogatories," and "failed to produce responsive documents in a meaningful or complete manner," and requesting the Court impose terminating or evidentiary sanctions. (ECF No. 58 at 3–4.)

On March 4, 2026, the Court issued an order granting in part Plaintiff's Motion for Sanctions (the "Sanctions Order"). (ECF No. 63.) In the Order, the Court found that Defendant's complete failure to respond to Plaintiff's Revised Interrogatories warranted compelled responses, in addition to a monetary sanction for Plaintiff's reasonable attorney fees and expenses. (*Id.* at 7.) Accordingly, the Court ordered Defendant to produce full and complete written responses to the Revised Interrogatories by March 27, 2026. (*Id.* at 9.) The Court further ordered Defendant and defense counsel, Mario P. Tafur and Phillip R. Berwish, to pay Plaintiff's reasonable expenses, including attorney's fees, caused by their failure to produce responses to the Revised Interrogatories. (*Id.*) The Court ultimately determined that Defendant and defense counsel are liable for payment of $22,543.00, which are the fees caused by Defendant's failure to respond to the Revised Interrogatories. (ECF No. 80.)

In the Sanctions Order, the Court also addressed Plaintiff's argument that Defendant's failure to produce all nonprivileged documents responsive to RFP Nos. 11, 12, 14, and 26 and failure to produce a privilege log warranted sanctions under Federal Rule of Civil Procedure 37(b)(2)(A). (ECF No. 63 at 7.) The Court further addressed Plaintiff's argument that Defendant's method of production, *i.e.*, Defendant "produced only a small number of documents on a piecemeal basis, repeatedly re-produced the same limited materials in successive productions, failed to Bates-stamp documents, and did not produce responsive materials in native format where required, . . . substantially prejudiced Plaintiff's ability to litigate its claims and defenses." (ECF No. 58 at 4.) However, the Court determined that Plaintiff's motion did not "set forth sufficient facts for the Court to determine whether [Defendant] ha[d] produced sufficient documents responsive to RFP Nos. 11, 12, 14, and 26, or whether ESI 'that should have been preserved . . . is lost because [Defendant] failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" (ECF No. 63 at 8 (quoting Fed. R. Civ. P. 37(e).)

///

///

Therefore, in lieu of sanctions related to Plaintiff's RFPs, the Court ordered both parties to "assign a unique, sequential bates number to all documents or ESI they produce during this litigation," and specifically ordered Defendant to "assign a unique, sequential bates number to all documents or ESI it has produced to date, on or before March 27, 2026." (*Id.* at 9.) The Court further ordered Defendant to produce all responsive materials in native format, to the extent it had not already done so. (*Id.*) Based on the foregoing, the Court denied without prejudice Plaintiff's request for terminating sanctions related to Defendant's document production. (*Id.* at 8–9.) However, the Court cautioned Defendant and its counsel that "should [Plaintiff] refile and prevail on said issues, additional sanctions, including the imposition of additional fees and expenses, will likely be imposed." (*Id.* at 10.)

**C. Special Master**

On April 20, 2026, the Court held a Discovery Conference. (ECF No. 74.) During the Discovery Conference, the Court notified the parties of its intent to appoint a special master pursuant to Federal Rule of Civil Procedure 53 to serve as a discovery referee regarding Defendant's compliance with the Sanctions Order. (ECF No. 75.) The parties agreed to the appointment of a special master. (ECF No. 76.) After being given an opportunity to suggest candidates for appointment, both parties left the selection up to the Court. (ECF Nos. 75, 76.) Therefore, the Court selected Bill VanDeWeghe at JAMS and appointed him to function as special master pursuant to Rule 53 to determine whether Defendant fully and completely complied with the Court's September 19, 2025 Order (ECF No. 42) and the Sanctions Order (ECF No. 63). (ECF No. 76.)

On May 14, 2026, the special master filed a report and recommendation ("R&R") with the Court. (ECF No. 81.) As set forth in the R&R, the special master "found that Defendant has not complied with the Court's orders for discovery." (*Id.* at 2.) Specifically, Defendant's responses to the Revised Interrogatories are "inconsistent and/or incomplete." (*Id.* at 2.) The R&R further identified the deficiencies in Defendant's document production. (*Id.* at 3–4.) The special master concluded that "Defendant does not appear to

have made good faith, diligent efforts to preserve potential evidence, locate documents or ESI, or provide complete responses as ordered by the court." (*Id.* at 4.) "As a consequence, Plaintiff has not been able to identify or refute evidence that could be important for their case." (*Id.*) The special master recommended that "requiring Defendant to bear the costs for this process seems to be justified," as does the award of additional attorney's fees. (*Id.* at 4–5.) No party objected to the R&R. *See* Fed. R. Civ. P. 53(f)(2).

The Court held a Status Conference to discuss the R&R on May 22, 2026. (ECF No. 83.) Following the Status Conference, the Court ordered Defendant to complete its document production and serve an amended response to Plaintiff's Revised Interrogatories by May 26, 2026. (ECF No. 84.) Plaintiff was also authorized to file a motion for sanctions. (*Id.*) The Court did not require any additional meeting and conferring.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). If a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders," including dismissing the action in whole or in part or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi). A finding that a discovery order has been violated "is entitled to considerable weight" because the presiding judge is "best equipped to assess the circumstances of the non-compliance." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (citation omitted). District courts also have inherent authority to sanction parties or their lawyers for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *see also Wyle*, 709 F.2d at 589 ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.").

Under both Rule 37 and the court's inherent authority, terminating sanctions should be imposed only in circumstances where the violation is due to "willfulness, fault, or bad

faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). In determining whether terminating sanctions for noncompliance with discovery is appropriate, the court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (quoting *Malone v. U.S. Postal Serv*., 833 F.2d 128, 130 (9th Cir. 1987)); *see also Leon*, 464 F.3d at 958 n.4 ("Although this five-factor test is usually used to review the propriety of Rule 37 sanctions, this same test was applied in [*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)] to review sanctions granted under a court's 'inherent power'.").

This is not a "mechanical" test but rather is intended to help a district court "think about what to do." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Terminating sanctions may be warranted "where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (citation omitted). "The most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Connecticut Gen. Life Ins. Co*., 482 F.3d at 1097 (citation and internal quotation marks omitted); *see also Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (when considering terminating sanctions, factors three and five "are decisive").

District courts in this Circuit apply the preponderance of evidence standard when considering sanctions. *See Smahi v. STMIcroelectronics, Inc.*, 825 F. Supp. 3d 1143, 1146 (N.D. Cal. 2026); *WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14-cv-1191 JLS (KSC), 2019 WL 6527951, at *10 (S.D. Cal. Dec. 4, 2019). On considering a motion for sanctions, a district court may make factual findings and assess

the credibility of witnesses. *See Leon*, 464 F.3d at 958; *Valley Eng'rs Inc.*, 158 F.3d at 1054.

## III. DISCUSSION

### A. Status of Specific Discovery At Issue

In the instant Motion, Plaintiff seeks sanctions under Rule 37 and the Court's inherent authority based on Defendant's violation of multiple court orders compelling the same discovery. (ECF No. 85.) The orders at issue concern Defendant's responses to Plaintiff's Revised Interrogatories and RFP Nos. 11, 12, 14, and 26. (*See* ECF Nos. 42, 63, 84.) Plaintiff also seeks sanctions for spoliation due to Defendant's failure to preserve ESI. Before analyzing Plaintiff's request for sanctions, the Court will address the status of the discovery at issue.

#### 1. Revised Interrogatories

On July 14, 2025, Plaintiff served its Revised Interrogatories. (Declaration of Amanda Bruss, ECF No. 85-2 ("Bruss Decl.") ¶ 3.) Defendant failed to respond. (*Id.*) On September 19, 2025, the Court ordered Defendant to provide a full and complete formal response to Plaintiff's Revised Interrogatories on or before October 3, 2025. (ECF No. 42 at 1.)[2] As of the filing of Plaintiff's Motion for Sanctions on January 19, 2026, Defendant still had not responded to the Revised Interrogatories. (ECF No. 58 at 2.)

On March 4, 2026, the Court issued the Sanctions Order, in which it awarded monetary sanctions to Plaintiff under Rule 37(b)(2)(C) and ordered Defendant to produce a full and complete written response to Plaintiff's Revised Interrogatories by March 27, 2026. (ECF No. 63.) Defendant served its first response to the Revised Interrogatories on March 27, 2026. (Bruss Decl. ¶ 3.)

Plaintiff found many of Defendant's initial answers to the Revised Interrogatories to be "substantively deficient." (ECF No. 68 at 2.) Plaintiff identified the following issues

---

[2] The Court further found that Defendant had waived all objections to the Revised Interrogatories. (*Id.*)

with the response: (1) multiple answers incorporated by reference deposition testimony rather than providing written responses; (2) multiple answers referred to documents without adequately answering the interrogatories themselves; (3) the response to Interrogatory No. 2 acknowledged that Defendant "consulted Charles Farris, Bulldog Law's trademark counsel" and that "counsel conducted internet searches" in connection with selecting the BULLDOG LAW name, yet no communications with counsel, no trademark search results, no clearance opinion, and no documents reflecting that process appear anywhere in Defendant's productions; and (4) the response to Interrogatory No. 29 was only an objection despite the Court previously finding that all objections had been waived. (*Id.*)

During a May 6, 2026 hearing with the special master, the parties discussed in detail the amended interrogatory response to be provided by Plaintiff. (ECF No. 81 at 2; *see also* Bruss Decl. ¶¶ 8–9, Ex. A.) Defendant agreed to amend eleven interrogatory answers. (ECF No. 81 at 2.) Defendant's "second" amended interrogatory response was served on May 11, 2026, thirty minutes before another hearing with the special master. (Bruss Decl. ¶ 10, Ex. B.) During the hearing, the special master found the second amended response to the Revised Interrogatories "to be inconsistent and/or incomplete." (ECF No. 81 at 2.) The special master also found it "difficult to follow the sequence of events and discussions that allegedly took place." (*Id.*)

Among other issues identified during the hearing, Defendant: (1) did not attach the deposition excerpts or underline the responsive testimony as directed; (2) continued to incorporate deposition testimony by reference; (3) did not provide the dates or details of the bar complaints it acknowledged; (4) did not address whether it would produce its trademark counsel or Raoul Severo for deposition; (5) did not identify deposition testimony responsive to the questions at issue; and (6) did not verify the response.[3] (Bruss Decl. ¶¶

[3] The response was signed by Mario Tafur, principal of Defendant, but it was not signed under oath, as required by Federal Rule of Civil Procedure 33. (ECF No. 85-2 at

10–11.) One of Defendant's amended answers also contradicted its prior answer on the issue of who was "the sole decision-maker in the adoption of the name/mark." (*Id.*) Defendant initially identified Mario Tafur as the decision-maker and later stated that Raoul Severo was solely responsible. (Bruss Decl. ¶ 10.)

At the May 11 hearing, Defendant agreed to further amend its interrogatory response. (ECF No. 81 at 2.) On May 13, 2026, counsel met with the special master to discuss, *inter alia*, Defendant's interrogatory response. (*Id.* at 4.) At that time, Defendant was still planning on further amending its interrogatory response. (*Id.*) On May 22, 2026, the Court held a Status Conference to address the R&R. (ECF No. 83.) Based on defense counsel's representations in the R&R and during the Status Conference, the Court ordered Defendant to serve an amended response to Plaintiff's Revised Interrogatories by May 26, 2026. (ECF No. 84.)

Defendant claims it finalized its "third" amended response prior to May 26, 2026, but failed to upload the response with the remainder of its production due to an inadvertent paralegal error. (ECF No. 90-1.) Plaintiff argues the third amended response still has not been served. (ECF No. 91 at 4.) Instead of serving the response after recognizing its error, Defendant simply attached the third amended response to its opposition to the present Motion on June 22, 2026, nearly a month after it was due. (*Id.*) Defendant thereafter filed a corrected version on June 23, 2026. (ECF No. 90-1 at 12–30.)[4]

///

///

///

---

37.) Moreover, counsel for Defendant represented that his client, Mr. Tafur, had not reviewed the response as of May 11, 2026, despite the response bearing his signature. (Bruss. Decl. ¶ 11.)

[4] For purposes of this Order, the Court is going to consider the "corrected" version of the third amended response submitted by Defendant to be its final third amended response. (ECF No. 90-1 at 12–30.)

Plaintiff identifies the following errors in the third amended response: (1) the revised answers "incorporate by reference" prior answers, but such prior answers are not included; (2) underscored deposition transcripts are not attached; (3) the response does not refer to Bates-stamped documents; and (4) the response is not verified. (ECF No. 91 at 4–6.)

2. Requests for Production Nos. 11, 12, 14, and 26

Plaintiff served its first set of RFPs on June 13, 2025. (Bruss Decl. ¶ 3.) On July 25, 2025, Defendant served written responses and objections, along with 17 image files and one audio recording. (ECF No. 58-1 at 2.) None were Bates-stamped. (*Id.*) On August 8, 2025, the parties held a Discovery Conference with the Court to address Defendant's response. (*Id.*) The parties were instructed to further meet and confer. (ECF No. 31.) On August 29, 2025, the Court ordered Defendant to make a supplemental production on or before September 2, 2025. (ECF No. 36.) On September 2, 2025, Defendant produced nine documents and a cover letter. (ECF No. 58-1 at 5.)

On September 19, 2025, following a Discovery Conference with the Court, the Court ordered Defendant to provide a formal response to Plaintiff's RFPs and produce non-privileged documents responsive to RFP Nos. 11, 12, and 26 on or before October 3, 2025. (ECF No. 42.) The Court further ordered Defendant to produce non-privileged documents responsive to RFP No. 14 on or before October 3, 2025, unless the parties agreed to stipulate to facts relevant to Defendant's ownership and registration of thebulldog.law domain in lieu of production. (*Id.*)

The RFPs relevant to the Court's September 19 Order are as follows:

> **RFP No. 11:** All marketing plans, brand guidelines, and promotional materials relating to the BULLDOG LAW name or logo.
>
> **RFP No. 12:** Documents sufficient to show gross revenue, net profits, and advertising expenditures from January 1, 2022, to present, attributable to use of the BULLDOG LAW mark.
>
> **RFP No. 14:** All documents concerning registration or use of www.thebulldog.law or any similar domain name.

> **RFP No. 26:** Documents sufficient to show each way in which You made or are making use of the BULLDOG LAW mark in commerce, including ads, contracts, invoices, business cards, or social media posts.

(ECF Nos. 58-2 at 6–8.) The term "documents" is defined to include: "correspondence, letters, emails, text messages, social media content (including posts, direct messages, and metadata), memoranda, notes, diaries, calendars, telephone message logs, voicemail transcripts, contracts, agreements, business plans, marketing materials, promotional content, financial records, invoices, receipts, ledgers, audio or video recordings, and computer files or databases." (*Id.* at 3.)

During Mario Tafur's deposition on September 23, 2025, he identified several categories of documents responsive to the foregoing RFPs. (ECF No. 58-1 at 7–8.) Defendant did not produce any documents or discovery responses on October 3, 2025, as ordered. (*Id.* at 8.) On October 6, 2025, Defendant produced a supplemental response to Plaintiff's RFPs, along with 22 documents, consisting primarily of invoices for bus shelter advertisements (16 documents), invoices for only two months of EZ texting (2 documents), a log of text messages sent by EZ texting, and GoDaddy receipts reflecting renewal of the thebulldog.law domain by Mr. Tafur (individually) for one year, dated May 29, 2024. (*Id.*) On October 14, 2026, the date of David Precilla's deposition, Defendant produced what were purported to be an additional 12 documents, but included only one document that had not previously been produced, a document entitled, "BullDog PC Profit and Loss, January–June, 2025." (*Id.* at 9.)

During his October 14 deposition, Mr. Precilla also testified regarding categories of documents responsive to the foregoing RFPs that had not been produced. (*Id.* at 10–11.) On December 11, 2025, Defendant produced additional documents consisting of: (1) Google Ads reports reflecting summary advertising performance metrics for limited date ranges, including approximately September 12, 2025 through October 9, 2025 and October 3, 2025 through October 9, 2025; (2) a document titled "Acceptance of Office for Bulldog Law, P.C." dated January 1, 2024, reflecting Mr. Tafur's acceptance of corporate offices;

and (3) a profit-and-loss statement for BullDog P.C. covering the period January through November 2025. (*Id.* at 12–13.) None of the documents were Bates-stamped. (*Id.* at 13.)

On December 11, 2025, Plaintiff requested leave to file a motion addressing Defendant's failure to comply with the Court's September 19 Order. (ECF No. 52.) The Court thereafter issued a briefing schedule for a sanctions motion. (*Id.*) Plaintiff argued in its motion that Defendant's production with respect to RFP Nos. 11, 12, 14, 26 was wholly deficient. (ECF No. 58.) In the Sanctions Order issued on March 4, 2026, the Court found that Plaintiff's motion did "not set forth sufficient facts for the Court to determine whether [Defendant] has produced sufficient documents responsive to RFP Nos. 11, 12, 14, and 26, or whether ESI 'that should have been preserved . . . is lost because [Bulldog Law] failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" (ECF No. 63 at 8 (quoting Fed. R. Civ. P. 37(e)).)

The Court ordered the parties to "assign a unique, sequential bates number to all documents or ESI they produce during this litigation" and ordered Defendant specifically to "assign a unique, sequential bates number to all documents or ESI it has produced to date, on or before March 27, 2026." (*Id.* at 9.) The Court further ordered Defendant to produce, to the extent it not already done so, all responsive material that is not in native format, "in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms" on or before March 27, 2026." (*Id.*)

On April 10, 2026, both parties filed Status Reports regarding discovery. (ECF Nos. 68, 69.) Plaintiff represented that Defendant produced two separate sets of documents on March 27, 2026, one set Bates-stamped BULLDOG000001–169, the other Bates-stamped 000001–126, each set containing some, but not all, of the same documents, and in a different sequential order. (ECF No. 68 at 3.) Defendant also did not produce any documents in native format. (*Id.*) The production consisted largely of advertising documents including contracts (which had not been produced previously) and invoices from Vector Media, Tranzito-Vector, EZ Texting, GoDaddy (which had been produced previously), Google Ads performance data, and summary profit and loss statements. (*Id.*)

Plaintiff identified the following missing documents: (1) financial records underlying the profit and loss statements; (2) Google reports in native format; (3) any correspondence; (4) any trademark clearance searches, opinions or documents discussing name adoption; and (5) any intake forms, documents, or recordings. (*Id.* at 4.) In its Status Report, Defendant argued that its production fully complied with the Court's Sanctions Order. (ECF No. 69.)

In the R&R, dated May 13, 2026, the special master reported that he initially asked Defendant to provide a "comprehensive production of documents organized and Bates stamped pursuant to the Court's prior orders." (ECF No. 81 at 2.) On May 11, 2026, Defendant provided a collection of 665 pages of Bates-stamped documents which, if grouped together (e.g., multi-page spreadsheets or reports are considered one document), totaled approximately forty-five documents. (*Id.*) The special master identified the following deficiencies in Defendant's production: (1) documents were not provided in their native format; (2) documents were missing (e.g., pictures and images were not provided that had been part of prior productions); and (3) no ESI (e.g., emails, text messages, or other similar communications) was produced. (ECF No. 81 at 3.)

Defense counsel informed the special master that Defendant was still conducting a search to locate documents, such as complaints to the State Bar and communications with Defendant's trademark attorney, Mr. Farris. (*Id.* at 3–4.) During a call with the special master on May 13, 2026, Defendant produced Exhibit C, which is an excerpt from the fee agreement between Defendant and Mr. Farris. (*Id.* at 4, Ex. C.) The special master concluded that "Defendant does not appear to have made good faith, diligent efforts to preserve potential evidence, locate documents or ESI, or provide complete responses as ordered by the court." (*Id.*) Moreover, "Defendant's counsel could not confirm whether addition[al] documents exist, were deleted, or never existed." (*Id.*)

During the May 22, 2026 Status Conference with the Court, defense counsel advised that Defendant was still looking for documents. (ECF No. 83.) The Court therefore ordered Defendant to complete its document production no later than May 26, 2026. (ECF

No. 84.) On May 26, 2026, Defendant served a 941-page document production. (Bruss Decl. ¶ 21.) The first 665 pages include the set reviewed by the special master. (*Id.*) Newly produced documents appear to include: (1) an Excel spreadsheet created by Defendant of law firms that purportedly use the term "bulldog" in marketing; (2) the Separation Agreement with Mr. Severo (Defendant's founder); (3) documents identifying station information for radio spots; (4) screenshots of Defendant's Google page; (5) Defendant's trademark application and the associated filing receipt; (6) a document entitled "Acceptance of Office"; (7) two graphs without any key or explanatory note; (8) an undated document listing ICAN fees for $0.18 for THEBULLDOGLAW.com; (9) advertising emails between Defendant's office manager and third parties which appear to transmit documents, but no attachments are included; (10) an email containing a conversation with Mr. Farris, Defendant's trademark counsel; (11) screenshots of Google and YouTube ads; and (12) two native spreadsheets. (Bruss Decl. ¶¶ 22–23.)

After the May 26 production, Plaintiff claims to still be missing: (1) the Farris retainer agreement submitted by Mr. Berwish during the May 13, 2026 conference with the special master; (2) exemplars of the radio advertisements Defendant produced using the at-issue mark; (3) the audio recording Defendant made of a former client of Plaintiff's who had called Bulldog Law; (4) intake records or call transcripts; (5) documents related to any bar complaints against Defendant and/or its principal; (6) substantive communications with trademark counsel, including any searches conducted by counsel upon which Defendant relied or a discussion of the issues noted in counsel's retainer; (7) documents addressing where or when the billboards and bus shelter advertisements using the at-issue mark were made; (8) financial documents supporting Defendant's damages claims; (9) underlying documents supporting Defendant's summary profit and loss statements; (10) complete marketing documents reflecting Defendant's Google marketing data; (11) internal communications amongst Defendant's staff, including any correspondence related to creation of the Bulldog Law Firm spreadsheet Defendant has repeatedly filed in this case;

and (12) any correspondence regarding Batta Fulkerson. (*Id.* ¶ 24.) Plaintiff also notes that Defendant has never produced a privilege log in this case. (*Id.* ¶ 27.)

In its opposition to the present Motion, Defendant argues that it complied with the special master's instructions, noting that on May 26, 2026, it uploaded, *inter alia*, native files with an index, a master PDF with Bates numbers, and an index identifying the nature of the Bates-numbered documents. (ECF No. 90 at 2.) Defendant takes issue with Plaintiff's position that it failed to produce documents that Plaintiff already has in its possession through informal production (e.g., the Farris retainer agreement provided to the special master). (*Id.* at 3.) Defendant argues that it has waived its privilege with respect to its communications with Mr. Farris and has produced such communications. (*Id.*)

With respect to production of bar complaints against Defendant and/or its principal, Defendant stated in response to Interrogatory No. 17 that it was only aware of one negative Google review which it had previously produced and there had been no bar complaints against Defendant or any of its attorneys. (*Id.* at 4.) Defendant identified several bar complaints from 2023 and 2024 made against the prior owner, Mr. Severo, before the transition, but claims these complaints are unrelated to Defendant. (*Id.* at 4–5.)

With respect to production of communications regarding the creation of the spreadsheet showing the use of "Bulldog" by other law firms, Defendant argues the special master did not instruct it to produce such communications. (*Id.* at 5–6.) Defendant contends that the special master only instructed Defendant to produce communications with Defendant's advertisers which mention or attach exemplars of advertising. (*Id.* at 6.) Defendant does not address its failure to produce the attachments to the advertising emails it did produce.

With respect to production of correspondence regarding Plaintiff, Defendant suggests that its response to Plaintiff's February 19, 2025 demand letter constitutes the only such correspondence in its possession. (*Id.*) Concerning production of documents underlying Defendant's profit and loss statement, Defendant argues that its production complied with RFP No. 12, which requested: "Documents sufficient to show gross revenue,

net profits, and advertising expenditures from January 1, 2022, to present, attributable to use of the BULLDOG LAW mark." (*Id.*) Defendant asserts that the special master did not require more. (*Id.*)

Regarding Plaintiff's request for documents addressing where or when the billboards and bus shelter advertisements using the at-issue mark were made, Defendant argues that it produced the contracts for its advertisements and the RFPs at issue did not seek the location of each ad. (*Id.* at 7.) Defendant further argues that it produced all available documents concerning its billboards and bus shelter advertisements and the special master did not require more. (*Id.*) There was purportedly an inquiry as to where Defendant marketed itself geographically, but Defendant claims it answered that question. (*Id.*) Defendant states that the advertisements ran in Southern California markets (primarily Los Angeles, and Orange County areas) during 2024 and 2025. (*Id.*) Defendant claims specific dates and locations are reflected in the Vector Media invoices and contracts that Defendant previously produced. (*Id.*)

With respect to the production of intake records or call transcripts, Defendant argues that it could not produce such records since they were deleted. (ECF No. 90 at 7–8.) This includes the audio recording Defendant made of a former client of Plaintiff who had called Defendant. (*Id.* at 8.) The Court cannot discern which RFP at issue these records would be responsive to, but it will address the deletion below in discussing spoliation.

With respect to production of all exemplars of the radio advertisements Defendant produced using the at-issue mark, Defendant claims it produced all available exemplars of radio advertisements, including iHeartMedia campaign reports and invoices. (*Id.*) Defendant did not retain audio files of the completed commercials after the campaigns concluded. (*Id.*) Concerning Defendant's Google marketing data, including "brand insights" spreadsheets reflecting brand performance, views by unique users, average impression frequency of when and where ads appeared, campaign information, keyword usage, and other data, Defendant argues that this type of data was not requested. (*Id.* at 8–9.) Despite its argument, Defendant contends that it has produced all reasonably available

Google marketing data in its possession, including Google Ads campaign performance reports, auction insights reports, ad schedule (day and hour) reports, automatic placements reports, and keyword performance data, in both PDF and native format. (*Id.* at 9.) Defendant states that "[n]o additional responsive Google data exists." (*Id.*)

3. <u>Preservation of Evidence</u>

In the R&R, the special master lays out a series of events regarding the preservation of electronically stored information ("ESI"). (ECF No. 81 at 3–4.) The timeline of Defendant's failure to preserve ESI is as follows:

| | |
|---|---|
| February 19, 2025 | Plaintiff alerted the Defendant about the need to preserve ESI in a demand letter. |
| June 13, 2025 | Plaintiff served RFPs seeking ESI and other documents. |
| July 14, 2025 | Plaintiff served interrogatories requesting that communications be identified, which would have included ESI. |
| July 31, 2025 | David Precilla, the person responsible for administrative matters in Defendant's office, testified during his deposition that he did not know what a "Litigation Hold" is, and that no special process was put in place to preserve evidence. |
| May 13, 2026 | During a conference call with the special master, Defendant's counsel could not confirm whether ESI documents exist, were deleted, or never existed. |

///

///

Defendant did not produce any emails until May 26, 2026. (ECF No. 85-1 at 7.) Even then, it was only "a handful of emails (produced as same-day screenshots) and not a single text message." (*Id.*) As set forth above, Defendant also did not maintain any intake records or call transcripts (except for one relevant transcript), audio files of the completed radio commercials, and potentially relevant Google data.

In its opposition, Defendant does not address Plaintiff's contention that it failed to preserve email, text messages, or other communications. Defendant simply states that it produced the emails between Defendant and Mr. Farris, Defendant's trademark counsel. (ECF No. 90 at 3; *see also* ECF No. 90-1 at 8 (000933).) In the production index produced by Defendant, the following four marketing emails are also identified: (1) May 29, 2024 email from David Precilla to Cristian Solorzano re: Signed Document & Quick Edit (Clear Channel Outdoor); (2) May 29, 2024 email chain between Cristian Solorzano and Simone Bradley (Clear Channel) re: Quick Edit to Billboard Designs (Personal Injury – Auto Accidents); (3) May 1, 2024 email from Brian Barry (iHeartMedia) to David Precilla & Mario Tafur re: Revised English Immigration, Criminal & Personal Injury Radio Commercials; and (4) August 6, 2024 email from David Precilla to Neil Grunig & Mario Tafur re: QR Code for Banners (redirects to YouTube Channel). (ECF No. 90-1 at 7–8.)

Defendant does address its failure to maintain intake records, stating that it utilized the RingCentral system and all call recordings were automatically deleted after approximately 30 days "pursuant to Defendant's standard business retention policy that was in place at the time." (ECF No. 90 at 8.) Defendant further asserts that despite a diligent search, "[s]ome historical 'brand insights' data is no longer accessible in exportable format due to Google's retention policies and changes in account access after [the] campaign periods ended." (ECF No. 90 at 9.)

**B. Spoliation**

Plaintiff's spoliation argument focuses primarily on the loss of the intake call recordings. (ECF No. 85-1 at 20–21.) Plaintiff argues that the Court "should, at a minimum, issue the adverse-inference jury instruction Plaintiff has requested with respect

to the intake-call recordings and transcripts." (*Id.* at 23.) Specifically, Plaintiff requests a "jury instruction that Defendant failed to preserve intake call recordings during the pendency of this litigation despite its obligation to do so, and that the jury may infer that those recordings would have been unfavorable to Defendant, including as evidence of actual consumer confusion." (ECF No. 68 at 6; *see also* ECF No. 85-1 at 23.)

Rule 37(e) provides for sanctions for the spoliation of ESI that the party was under a duty to preserve. The duty to preserve evidence attaches when litigation is "pending or reasonably foreseeable." *Sunrider Corp. v. Bountiful Biotech Corp*., 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *see also United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002). In the Ninth Circuit, courts generally agree that this duty arises "[a]s soon as a potential claim is identified." *Apple, Inc. v. Samsung Elecs. Co*., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citations omitted). This duty extends to evidence that parties knew or should have known was relevant or may be relevant to future litigation. *See Kitsap*, 314 F.3d at 1001; *Sunrider Corp*., 2010 WL 4590766, at *29; *see also Wm. T. Thompson v. Gen. Nutrition Corp*., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.").

Under Rule 37, "[s]anctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citing *U.S. v. Town of Colorado City, Ariz*., 2014 WL 3724232, *7 (D. Ariz. Jul. 28, 2014)) (quotations omitted). "While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3)

restores the innocent party to their rightful litigation position." *Id.* (citing *Id.*) (quotations omitted). "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Id.* (citing *Id.*) (quotations omitted).

Upon review of the filings, the Court finds that although Defendant was under a duty to preserve its intake call recordings and failed to take adequate steps to do so, there is no evidence that Defendant intended to deprive Plaintiff of this information. Moreover, the Court finds that Plaintiff has not sufficiently demonstrated that it is prejudiced by Defendant's failure. In this regard, the Court notes that the firm collected and retained intake information in multiple formats and therefore such information has remained largely available to Defendant. During his deposition, Mr. Precilla testified about how he used RingCentral:

> Q: So your current practice is, if you get a call in, you'll ask, "Hey, do you mind if I record this call," or something along those lines?
>
> A: Yeah. Yeah.
>
> Q: How are those recordings being maintained within the firm?
>
> A: It's basically done through RingCentral, but then all that information on the cloud gets, I believe, removed after 30 days, so we'll try to copy/paste it onto our notepad if we have an intake. So as soon as the intake's done, we copy/paste it -- it creates, like, a little note.
>
> Q: Okay. So the transcripts of calls that have been recorded within the last, for example, six months, where would I find this?
>
> A: I couldn't tell you. I don't know.
>
> Q: Has there been any effort made by the firm to maintain copies of this transcript since this lawsuit was initiated?
>
> A: I don't know, honestly.
>
> Q: Has – have you received any notice from the firm, as somebody who does intake calls, that you need to maintain copies of the recordings you're making of intakes?
>
> A: No. No. We do it – it's more of an internal – if we're a little busy or if we don't have our hands on a computer, there's a button on our phone

that we – you know, basically allows us to take notes, and then we copy those notes over into an intake.

Q: But the notes that – from the recordings, are those kept somewhere?

A: I don't know. Because I know when I use it, I'll ask a client, and it creates it on a notepad. Have you ever used RingCentral?

Q: No.

A: Oh, okay. That's – so it – it just creates, like, a little separate note. It's not like it's a recording. It's a note transcribed of our conversation, and then we copy that onto the intake. And then that's it. That's it. It – literally, by the time we're done and we hang up on those calls, there's a thing where you can clean up your inbox, like on voicemails that are older than a month, and it automatically removes any old voicemails, stuff like that, so you don't get bogged down with messages and voicemails and all that good stuff. So that's exactly how it works. So I don't – I don't know if there's backups. I don't know how that works. I don't know –

Q: Do you –

A: – the answer to that.

Q: When you move that to your intake information, do you copy the entire transcript or just the parts that you find relevant?

A: The parts that we find relevant.

(ECF No. 58-10 at 35–37.)

Mario Tafur further testified that the firm maintains client intake forms so that when a potential client would call the office, "the individual taking the call would ask them . . . what kind of case is it, for their name and information, if they have an emergency contact, if they have a language preference, where their court is, where their county is . . . what the case might be about, and when their next court date might be, are they a citizen" and how they found the firm. (ECF No 58-9 at 15–16.) If the client is retained, the relevant intake information is then put into the firm's client management software and the forms are added to the client file. (*Id.* at 18.) Defendant had access to this information in responding to discovery.

///

In evaluating prejudice, the Court also considered that Mr. Tafur became the sole Director, President, Chief Executive Officer, Secretary, and sole shareholder of Defendant effective January 1, 2024, and has filed a declaration in this case under penalty of perjury stating as follows:

> Bulldog Law has never received a call from anyone that was attempting to reach Batta Fulkerson, with the exception of a woman who called in May 2025, indicating that she googled "Batta Fulkerson Bulldog" and was directed to our firm. An identical search was conducted while our staff was on the phone with this individual that demonstrated that using Google to search "Batta Fulkerson Bulldog" did not lead to results showing Bulldog Law P.C., but instead resulted in links to the Batta Fulkerson website. It was further notable that this woman was a client of Batta Fulkerson since 2024 and may have an open matter with Batta Fulkerson as her counsel. Given that this call was made long after this lawsuit was filed and that prior to this call Bulldog Law P.C. never received a single call from anyone confused about the two firms and that this was either a past or existing Batta client, the call raises serious questions as to whether or not is was a call requested by Batta itself.

(ECF No. 29 at 39–40.) Defendant thereafter produced a transcript of the call in connection with Mr. Precilla's deposition. (ECF No. 90 at 8.)

RFP No. 7 requests "[a]ll documents and communications relating to actual, potential, or reported consumer confusion between [Defendant] and [Plaintiff]." (ECF No. 42 at 23.) Plaintiff deposed Mr. Tafur and Mr. Precilla and neither of them testified to the existence of any intake call demonstrating confusion with Plaintiff other than the one identified above. Although Defendant did not produce the identified recording, it did produce the transcript. Based on the foregoing, Defendant arguably produced all documents responsive to RFP No. 7. On this record, the Court cannot find that Plaintiff has been prejudiced by Defendant's failure to maintain the intake call recordings.

In addition to the intake call recordings, Defendant identifies missing Google data and a lack of ESI production. However, Plaintiff has not sufficiently established spoliation of this evidence. Plaintiff has produced some Google data and admitted that some additional Google data is no longer available, but when and how that deletion occurred and

the relevance of such information is unclear. Plaintiff has also produced various emails relating to Defendant's communications with Mr. Farris and marketing communications, thus suggesting that all relevant emails have not been deleted.

The Court recognizes that Defendant has failed to produce all previously produced emails in native format, along with attachments, but the Court will give Defendant one final opportunity to rectify that error. Defendant must produce all previously produced emails in native format, along with their attachments within fourteen (14) days of the date of this Order. To the extent Defendant lacks the technical sophistication to produce these emails in native format, it must retain someone at its own cost to do so.

**C. Terminating Sanctions**

Plaintiff further argues that terminating sanctions are warranted for Defendant's willful defiance of the Court's September 19 and May 22 Orders, as well as the Sanctions Order. (ECF No. 85-1 at 16.) "When a district court imposes a sanction that amounts to dismissal, it is required to consider whether the noncompliance justifying the sanction 'involved willfulness, fault, or bad faith . . . and also to consider the availability of lesser sanctions.'" *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012)); *see also Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096 ("Only willfulness, bad faith, and fault justify terminating sanctions." (citation omitted)). In the Ninth Circuit, "'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)).

For the reasons set forth above and below in discussing the second *Malone* factor, the Court finds that Defendant's failure to timely serve a full and complete response to the Revised Interrogatories and timely produce a comprehensive Bates-stamped set of documents responsive to the RFPs amounts to disobedient conduct within the control of Defendant. Accordingly, the Court will consider each of the *Malone* factors to determine

whether terminating sanctions are appropriate. *See Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024).

1. Public's Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket

The first *Malone* factor is the public's interest in expeditious resolution of litigation, and the second *Malone* factor is the court's need to manage its docket. *See id.* "The first two *Malone* factors are typically considered together, and because they relate to docket-management issues" and particular deference is given to the district court's consideration of these factors as it is "in the best position to assess" them. *Id.* at 1147 (citation and internal quotation marks omitted). Where a court order is violated, these factors generally support sanctions. *See Valley Eng'rs Inc.*, 158 F.3d at 1057.

Here, there is no doubt that Defendant's continued refusal to fully comply with the Court's orders and discovery in a timely manner has delayed this case. The extensive back and forth between the parties, the Court, and the special master is detailed above. However, the initial Scheduling Order in this case was issued a little more than a year ago in June 2025, with a pretrial conference ("PTC") date of June 5, 2026. (ECF No. 21.) The schedule was amended once on May 7, 2026, to enable the special master to complete his duties. (ECF No. 79.) The schedule was amended one more time on July 8, 2026, to give the Court time to resolve the instant Motion. (ECF No. 95.) The PTC is currently scheduled for November 20, 2026. (*Id.*) Therefore, there have been two extensions of time in this case due to discovery issues that amount to approximately five months. That is not an unusual period of time for a schedule to be continued in a normal case without extensive discovery issues. Therefore, the Court finds that the first two *Malone* factors do not weigh in favor terminating sanctions. At best, they are neutral.

2. The Risk of Prejudice to the Other Party

"The third *Malone* factor—the risk of prejudice to the other party—examines the extent to which the recalcitrant parties' conduct creates a risk of either impair[ing] the [opposing party's] ability to go to trial or interfer[ing] with the rightful decision of the

case." *Transamerica Life Ins. Co.*, 93 F.4th at 1147 (citation and internal quotation marks omitted). The Ninth Circuit has "generally found that failure to comply with an order to produce specific discovery materials creates a sufficient risk of prejudice to satisfy this factor." *Id.*

Based on the foregoing, it remains unclear to what extent Defendant failed in its discovery obligations with respect to the specific RFPs discussed above,[5] but there is no doubt that it failed with respect to the Revised Interrogatories. Defendant has never produced a full and complete verified response to the Revised Interrogatories, in violation of Federal Rule of Civil Procedure 33 and the Court's Orders. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *see also* ECF Nos. 42, 63, 84.

Most notably, Defendant's third amended response is not signed under oath by an officer or agent of Defendant, as required by Rule 33. *See Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1212 (N.D. Cal. 2017) (noting that "all responses to interrogatories and requests for admission must be verified—that is, bear [the party's] signature attesting under penalty of perjury that his responses are true and correct"); Fed. R. Civ. P. 33(b)(1), (3), (5). Defendant's outside counsel is the only signatory to the third amended response and it is not signed under oath. (ECF No. 90-1 at 30.)

Moreover, an answer to an interrogatory "should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Lawman v. City & Cnty. of*

---

[5] Defendant represented in its opposition that it has conducted a diligent search and produced all documents responsive to RFP Nos. 11, 12, 14, and 26. The most recent response to the Plaintiff's RFPs appears to be the Third Supplemental Response dated March 27. 2026. (Bruss Decl. ¶ 22(i).) The Court does not have a copy of this response and therefore cannot determine whether these representations were made in Defendant's discovery response.

*San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016) (quoting *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000)). "Incorporation by reference is not a responsive answer." *Id.* (citation omitted). An answer to an interrogatory that contains a vague reference to a deposition is insufficient because the fact "that a witness testified on a particular subject does not necessarily mean that a party who is required to answer interrogatories adopts [the] substance of testimony to support his claim or contention." *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07CV1200-DMS (NLS), 2008 WL 11342247, at *3 (S.D. Cal. Oct. 10, 2008) (quoting J. *J. Delaney Carpet Co. v. Forrest Mills, Inc*., 34 F.R.D. 152, 153 (S.D.N.Y. 1963)); *see also Wagner v. Fishing Co. of Alaska, Inc.*, No. C06-1634RSL, 2008 WL 2813333, at *1 (W.D. Wash. July 18, 2008). If a party "contends that responsive information has been disclosed via other sources, it must provide the precise location of such information (e.g., by exhibit number and paragraph, or deposition page and line), the nature of the [testimony] at issue, and whether the information constitutes its full and complete response." *I-Flow Corp*., 2008 WL 11342247, at *3.

Here, Defendant's third amended response incorporates by reference prior answers such that each answer in the third amended response is not complete in itself. (ECF No. 90-1 at 12–13.) The answers are further replete with references to documents without Bates numbers and deposition testimony that Defendant incorporates by reference. (*Id.* at 12–30.) Although references to deposition testimony may be permissible under certain conditions, Plaintiff finds several of the citations non-responsive to the interrogatories at issue. (Bruss Decl. ¶ 10.)

During a hearing on May 6, 2026, the special master "gave Defendant specific, verbal and itemized written instructions for amending each response to comply with the Court's orders." (Bruss Decl. ¶ 8; *see also* ECF No. 81 at 2.) The special master "memorialized those instructions in a marked-up version of Defendant's March 27 interrogatory answers containing his embedded notes, which he provided to both parties on May 6, 2026." (Bruss Decl. ¶ 9, Ex. A.) One of the special master's notations was that Defendant must "underscore [deposition] transcripts where cited." (*See* ECF No. 85-2 at

18.) Although Defendant added citations to depositions between its second and third responses, underscored deposition transcripts were not attached.

For the foregoing reasons, the Court finds that the third *Malone* factor weighs in favor of Plaintiff.

3. The Public Policy Favoring the Disposition of Cases on Their Merits

"[T]he public policy favoring disposition of cases on their merits strongly counsels against dismissal." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig*., 460 F.3d 1217, 1228 (9th Cir. 2006). "At the same time, a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *Id.*

Here, the Court finds that this *Malone* factor weighs against dismissal, despite the delays caused by Defendant in discovery. In December 2025, Judge Schopler denied Plaintiff's Motion for Preliminary Injunction. (ECF No. 53.) In doing so, Judge Schopler determined that Plaintiff had failed to establish that it was likely to succeed on the merits of its case. (ECF No. 54 at 6.) In making this determination, Judge Schopler stated that he found Plaintiff's mark descriptive, lacking in any secondary meaning, and weak in legal terms. (*Id.* at 13, 42–43.)

Judge Schopler noted during the hearing on the Motion for Preliminary Injunction that the United States Patent and Trademark Office had stayed litigation related to Plaintiff's mark pending the outcome of this case. (ECF No. 54 at 7–8; *see also* ECF No. 29 at 8 n.4.) Given the implications of a ruling beyond this case and the Court's finding that the litigation has not been unreasonably delayed, the Court finds that this factor weighs against terminating sanctions.

4. The Availability of Less Drastic Solutions

Here, the Court finds lesser sanctions available. At a minimum, the Court finds it appropriate to order Defendant to pay all attorney's fees and costs incurred by Plaintiff (1) in preparing for and attending all hearings before the special master, and (2) in bringing the instant Motion. Pursuant to Federal Rule of Civil Procedure 53(g)(4), the Court further

finds it appropriate to allocate all costs for the special master process to Defendant, as recommended by the special master. (ECF No. 81 at 4.) Defendant was solely responsible for the need to appoint a special master and the length of the process.

In addition, the Court finds it appropriate to apportion half of Plaintiff's costs[6] for the depositions of Mario Tafur and David Precilla to Defendant. Defendant served initial responses to Plaintiff's discovery requests in July 2025. (ECF No. 58-1 at ¶¶ 4–5.) However, by the time these depositions occurred in late September and mid-October 2025, several categories of requested documents had still not been produced. (*Id.* at ¶¶ 24, 31.) Plaintiff attached excerpts of these depositions to its initial motion for sanctions. (ECF Nos. 58-9, 58-10.) The deposition transcripts demonstrate that the depositions were partially unproductive due to Defendant's failure to fully respond to Plaintiff's RFPs.

Next, Plaintiff argues that it will be prejudiced at trial because of Defendant's failure to produce communications with trademark counsel, clearance materials, financial source records, intake documents, and any ESI.[7] (ECF No. 85-1 at 17.) Plaintiff argues that it needs these documents to demonstrate willfulness, damages, and proof of consumer confusion. (*Id.*) In addition to a verified fourth amended response to the Revised Interrogatories and production of previously produced emails in native formats with attachments, the Court finds the following lesser measure to be appropriate.

With respect to communications with trademark counsel and clearance materials (e.g., searches or opinions),[8] Plaintiff seeks ESI discovery and a limited deposition of Mr. Farris. (ECF No. 85 at 3.) Defendant retained Mr. Farris in April 2024 "to review trademark strength and feasibility, trademark filing for text and logo marks, additional consulting regarding brand and intellectual property protection." (ECF No. 90-1 at 14.)

---

[6] This amounts to $5,040.85. (ECF No. 64-7.)

[7] The Court has previously addressed ESI and intake documents.

[8] Discovery on this topic was sought in multiple interrogatories including, but not limited to, Nos. 1, 2, 3, 5, 6, 11, 12, and 14.

Mr. Farris filed Defendant's trademark registration on June 3, 2024. (*Id.*) Defendant claims that it first became aware of Plaintiff's BULLDOG ATTORNEYS mark on or about January 8, 2025, when Plaintiff contacted Mr. Farris. (*Id.* at 17.) Plaintiff followed up with a formal demand letter on February 19, 2025. (*Id.*) Upon receipt, Defendant consulted with Mr. Farris, who communicated with Plaintiff's counsel. (*Id.* at 15.) Defendant has produced Mr. Farris' retainer agreement and emails with Mr. Farris, but Plaintiff finds the production insufficient. (ECF Nos. 90 at 3; 90-1 at 8; 85-3 at 8.) Given the potential significance of Mr. Farris's testimony to the issue of willfulness and damages, as well as Defendant's waiver of its privilege with Mr. Farris with respect to the matters at issue in this case, the Court finds that reopening fact discovery for the limited purpose of serving a deposition subpoena on Mr. Farris would be an appropriate lesser measure.[9]

With respect to financial documents, RFP No. 12 seeks "[d]ocuments sufficient to show [Defendant's] gross revenue, net profits, and advertising expenditures from January 1, 2022, to present, attributable to use of the BULLDOG LAW mark." (ECF No. 42 at 7.) Although Defendant has produced summary profit and loss statements, amongst other financial documents, Plaintiff claims that Defendant has produced "no underlying financial records, bank records, source documents, or accounting records supporting those summaries, despite document requests calling for complete financial information bearing directly on Plaintiff's damages claims." (ECF No. 68 at 4; *see also* ECF No. 90-1 at 6.) Defendant argues that it has sufficiently responded to the request and the RFP does not seek any underlying documents. (ECF No. 69 at 4.)

Plaintiff contends that this document request is directly relevant to Plaintiff's damages claim under the Lanham Act. (*See* ECF Nos. 42 at 5; 58-5 at 4; 58-7 at 2.) In the

---

[9] Mr. Farris has not previously been deposed in this case, but Defendant has stated that he can testify regarding his interactions with Mr. Tafur "in connection with the clearance and filing of a trademark application for 'Bulldog Law, P.C.' and [a] consultation after the receipt of a telephone call and demand letter from Plaintiff [following which] Mr. Farris opined that the term 'Bulldog' was generic." (ECF No. 90-1 at 22.)

Complaint, Plaintiff seeks, *inter alia*, the gains, profits, and advantages that Defendant has obtained as a result of its wrongful acts. (*See* ECF No. 1 ¶¶ 50, 55, 67, 71, Request for Relief.) However, Plaintiff does not explain why Defendant's profit and loss statements are insufficient to show Defendant's gains, profits, and advantages. Plaintiff also does not clarify what specific further information it needs to calculate damages. On its face, Defendant's response is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, the Court finds that Defendant need not produce additional discovery responsive to RFP No. 12.

5. Conclusion

After weighing the *Malone* factors, the Court finds that terminating sanctions are not warranted at this time. Despite Plaintiff's argument to the contrary, the Court finds that with the implementation of lesser measures, the parties will have access to the true facts such that this case can be decided on the merits. *See Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1097.

## IV. CONCLUSION

Overall, the Court finds that Defendant's discovery conduct throughout these proceedings has been dilatory at best. The Court has provided Defendant with ample opportunities to correct course and each time, Defendant has failed to fully comply with the Court's direction.

Based on the foregoing, the Court **GRANTS IN PART** Plaintiff's Motion as follows:

1. The Court adopts the special master's recommendation that (1) Defendant bear the costs for the special master, and (2) the Court award Plaintiff additional attorney's fees and costs related to Defendant's failure to comply with the Court's orders for discovery.

///

///

///

a. Accordingly, no later than **August 3, 2026**, Plaintiff shall file a declaration[10] identifying the attorney's fees and costs incurred by Plaintiff (1) in preparing for and attending all hearings before the special master, and (2) in bringing the instant Motion, including the fees and costs related to preparing said declaration. The declaration shall also identify all fees incurred by the special master.

b. No later than **August 10, 2026**, Defendant shall file an opposition addressing the reasonableness of the requested fees and costs or a notice of non-opposition.

c. The Court further awards Plaintiff half the costs it incurred in taking the depositions of Mario Tafur and David Precilla in the amount of $5,040.85.

2. Fact discovery is reopened for the limited purpose of allowing Plaintiff to take the deposition of Charles Farris. The deposition subpoena must be served no later than **July 27, 2026**. The deposition must be completed no later than **August 21, 2026**.

3. No later than **August 3, 2026**, Defendant shall produce native copies of all previously produced emails, including all attachments.

4. No later than **August 3, 2026**, Defendant shall serve a "fourth amended response" to Plaintiff's Revised Interrogatories that (1) is verified under oath by Defendant, (2) attaches all pages of the deposition transcripts cited in the answers with the relevant testimony underscored or highlighted, (3) includes

---

[10] The Court does not require a motion, but Plaintiff should attach a billing statement that includes a clear description of how the time was spent.

Bates-number citations for all referenced documents,[11] and (4) includes complete answers for each interrogatory.[12]

5. No later than **<u>August 7, 2026</u>**, Defendant shall file a Notice of Service of its fourth amended response which attaches a copy of the response.

6. **The Court finds that Defendant's discovery conduct throughout this litigation has added unnecessary delay and costs and required significant judicial resources to address and attempt to rectify. As a result, if Defendant fails to <u>TIMELY</u> and <u>FULLY</u> comply with the foregoing, the Court will issue an Order to Show Cause why (1) Mario P. Tafur and Philip R. Berwish should not pay a monetary sanction pursuant to Local Civil Rule 83.1 in the amount of $5,000.00 each for their discovery conduct outlined herein; and (2) the Court should not recommend that the District Judge impose evidentiary sanctions at trial.**

**IT IS SO ORDERED.**

Dated: July 20, 2026



Hon. Guillermo Cabrera
United States Magistrate Judge

---

[11] If the document was not previously Bates-stamped, Defendant must add a Bates stamp to the document (in the same format as the last Bates numbering was applied) and re-produce the document along with the interrogatories. If only a portion of a document is relevant to the answer, Defendant must identify the page, paragraph, and/or line of the relevant portion.

[12] Each answer may not incorporate by reference any other answer. In addition, the fourth amended response must be Defendant's complete response and include answers to <u>all</u> of the Revised Interrogatories, not just the ones being amended. The fourth amended response must be verified as required by the Federal Rules of Civil Procedure.