UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BATTA FULKERSON, LLP,

Plaintiff,

v.

BULLDOG LAW, P.C.,

Defendant.

AND RELATED COUNTERCLAIM.

Case No.: 25-cv-00551-AGS-GC

**ORDER ISSUING SANCTIONS AND AWARDING ATTORNEY'S FEES AND REPORT AND RECOMMENDATION RE: ADDITIONAL SANCTIONS**

**[ECF Nos. 85, 110, 119]**

Counsel for Defendant Bulldog Law, P.C. ("Defendant") have disobeyed virtually every order entered in this case since they substituted in as counsel in mid-2025. Counsel's conduct necessitated four Orders to Show Cause, numerous discovery-related orders, and otherwise unnecessary continuances. On July 20, 2026, the Court issued an order granting in part a Motion for Further Sanctions ("Further Sanctions Motion") filed by Plaintiff Batta Fulkerson, LLP ("Plaintiff") ("July 20 Order"). (ECF Nos. 85, 103.) The July 20 Order gave Defendant one final opportunity to correct several of its deficiencies in complying

with discovery. Despite the Court spelling out every step Defendant needed to take to correct its deficiencies, Defendant still failed to comply with the Court's order.

To address Defendant's deficiencies in compliance with the July 20 Order, the Court issued an Order to Show Cause on August 12, 2026, and held a Show Cause hearing on August 19, 2026. (ECF Nos. 110, 118.) To conceal their failures, rather than admitting their deficiencies, Defendant and its counsel made misrepresentations to the Court. Therefore, the Court issued a second Order to Show Cause on August 20, 2026, and held another Show Cause Hearing on August 26, 2026. (ECF Nos. 119, 126.) Defendant and defense counsel's responses were not sufficient, and they continued the pattern of misrepresentations to the Court.

Accordingly, for the reasons set forth below, the Court: (1) imposes monetary sanctions on Mario P. Tafur and Philip R. Berwish for their failure to comply with the July 20 Order and their lack of candor to the Court; (2) refers Mario P. Tafur to the Court's Standing Committee on Discipline; and (3) awards Plaintiff additional attorney's fees and costs.

In addition, the Court **RECOMMENDS** to the Honorable Andrew G. Schopler that Philip R. Berwish's pro hac vice admission be revoked. The Court further **RECOMMENDS** the imposition of sanctions in the form of an adverse jury instruction.

## I. BACKGROUND

### A. Relevant Factual Background

On March 7, 2025, Plaintiff, a San Diego, California based law firm, filed suit against Defendant, a Glendale, California based law firm. (ECF No. 1.) Plaintiff alleges it "has advertised as 'the bulldog lawyers' since the firm's inception in 2016." (*Id.* ¶ 12) It claims to be "the lawful owner of U.S. Registration No. 6304103 for the BULLDOG ATTORNEYS Mark, registered March 30, 2021, for legal services, including legal advice, legal information services, and providing information in the field of law in Class 045," and two registered design marks (Reg. No. 5295946 and Reg. No. 6152296) "for use in connection with 'attorney services' and 'legal advice; legal information services; legal

services; providing information in the field of law,' respectively, in International Class 045," which "were first used in commerce in 2017." (*Id.* ¶¶ 9, 11.) Plaintiff also alleges it "used the word marks, THE BULLDOG LAWYER, and INJURED IN AN ACCIDENT? HIRE A BULLDOG ATTORNEY, in commerce in connection with, 'attorney services; legal services; legal advisory services; legal consultation services; legal information services; legal support services; information, advisory and consultancy services relating to legal matters; pro bono legal services,' in International Class 045, since at least May 10, 2016," and has applications for these marks pending before the U.S. Patent and Trademark Office (Serial Nos. 98761975 and 98761983). (*Id.* ¶ 12.)

Plaintiff alleges Defendant "was formed on August 30, 2022, and commenced operation as a law firm under the name, BULLDOG LAW at some point thereafter." (*Id.* ¶ 18.) Plaintiff alleges Defendant's "unauthorized use of marks substantially similar to Plaintiff's trademarks in connection with services identical to those provided by Plaintiff" supports the following causes of action: (1) Trademark Infringement Under the Lanham Act; (2) Common Law Trademark Infringement; (3) Unfair Competition Under the Lanham Act; (4) False Designation of Origin Under the Lanham Act; (5) Violation of 15 U.S.C. § 1125(D); (6) Unfair Competition Under Cal. Bus. & Prof. Code § 17200; and (7) Unjust Enrichment. (*Id.* ¶¶ 1, 32–71.)

Defendant filed its Answer and Counterclaim on April 7, 2025, and Amended Answer and Counterclaim on April 28, 2025. (ECF Nos. 6, 8.) Defendant generally denies the validity of Plaintiff's claimed marks and seeks "a declaration that its use of 'BULLDOG LAW' does not infringe Plaintiff's alleged marks, and [requests that the court] cancel Plaintiff's registered trademarks insofar as the court finds that they are generic, descriptive without secondary meaning, or abandoned." (ECF No. 8 ¶ 60.) Defendant also alleges "Plaintiff's attempt to police the legal profession for uses of the term 'Bulldog,'" constitutes unfair business acts and practices. (*Id.* ¶ 83.) Defendant contends these facts support the following causes of action: (1) Declaratory Judgment of Non-Infringement and Cancellation of Registered Marks; (2) Violation of the First Amendment and California

Article I, § 2 of the California Constitution; (3) Unfair Competition Under Lanham Act, 15 U.S.C. § 1125(a); (4) Unfair Competition Under Cal. Bus. & Prof. Code § 17200 and Common Law; and (5) Unjust Enrichment. (*Id.* ¶¶ 59–92.)

**B. Discovery**

After Defendant filed its Answer and Counterclaim, the Court set an Early Neutral Evaluation ("ENE") conference and Case Management Conference for May 15, 2025. (ECF No. 7.) Defendant failed to participate in the filing of a Joint Discovery Plan and failed to lodge its ENE statement by the May 8, 2025 deadline. (ECF Nos. 12, 13.) On May 9, 2025, the Court ordered compliance by May 12, 2025, and cautioned that any further failures to comply may result in the imposition of sanctions. (ECF No. 13.) Defendant did not timely comply. Therefore, on May 14, 2025, the Court issued an Order to Show Cause. (ECF No. 15.) Defendant ultimately lodged its ENE statement with the Court on May 28, 2025, twenty days late. The Court discharged the Order to Show Cause. (ECF No. 19.)

The Court held an ENE conference and issued the Scheduling Order on June 4, 2025. (ECF Nos. 20, 21.) Discovery thereafter commenced. The Scheduling Order set a fact discovery deadline of October 15, 2025, and a Final Pretrial Conference date of June 5, 2026. (ECF No. 21.)

On June 13, 2025, Plaintiff served its First Set of Requests for Production ("RFPs") on Defendant. (ECF No. 58-2.) On July 14, 2025, Plaintiff served its Revised First Set of Interrogatories ("Revised Interrogatories").[1] (ECF No. 58-3.)

On August 8, 2025, the Court conducted a Status Conference, during which Plaintiff's counsel brought to the Court's attention concerns about Defendant's discovery responses, or lack thereof, and counsel's refusal to meet and confer about discovery or a

[1] Plaintiff's Revised First Set of Interrogatories were propounded after Defendant objected wholesale to providing a substantive response to any interrogatory in the First Set of Interrogatories Plaintiff served on June 13, 2025. (ECF No. 58 at 3.)

protective order. (ECF No. 31.) The Court then ordered counsel to, *inter alia*, "meet and confer regarding: (1) the adequacy of defendant's initial disclosures and discovery responses no later than August 13, 2025; and (2) a protective order no later than August 15, 2025." (*Id.*)

On August 29, 2025, "[a]fter receiving an update from counsel regarding a dispute about [D]efendant's responses to [Plaintiff's RFPs], the Court order[ed] [D]efendant [to] make a supplemental production on or before September 2, 2025." (ECF No. 36.)

On September 10, 2025, the parties lodged by email a Joint Discovery Statement informing the Court that counsel had met and conferred regarding Defendant's document production and failure to respond to the Revised Interrogatories but had reached an impasse. (ECF No. 42 at 4–27.)[2]

On September 19, 2025, the Court conducted a Discovery Conference and ordered:

> Defendant must provide full and complete formal responses to plaintiff's Revised First Set of Interrogatories on or before October 3, 2025. [] Defendant has not shown good cause for its failure to timely respond and, therefore, has waived all objections to these discovery requests. *See* FRCP 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.")
>
> Defendant must provide a formal response to plaintiff's [RFPs] and produce non-privileged documents responsive to RFP Nos. 11, 12, and 26 on or before October 3, 2025. [] Defendant must also produce non-privileged documents responsive to RFP 14 on or before October 3, 2025, unless the parties agree to stipulate to facts relevant to defendant's ownership and registration of thebulldog.law domain in lieu of production. *Id.*
>
> If defendant withholds any documents based on objection, its response "must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit

---

[2] On September 12, 2025, Philip R. Berwish was admitted pro hac vice for purposes of this case. (ECF No. 39.) Mr. Berwish filed his first pro hac vice application on August 5, 2025. (ECF No. 27.) However, it took four tries before he correctly completed his application. (ECF No. 27, 30, 37, 38.)

> inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). If any documents are withheld "based on a claimed protection or privilege [defendant] must identify the withheld documents in a manner such that the requesting party can reasonably identify and challenge the withholding of the documents." Chambers Rules for Civil Pretrial Proceedings, IX.

(ECF No. 42 at 1-2.)

On January 19, 2026, Plaintiff filed a Motion for Sanctions alleging Defendant "has never served any response – substantive or otherwise – to the Revised Interrogatories," and "failed to produce responsive documents in a meaningful or complete manner," and requesting the Court impose terminating or evidentiary sanctions. (ECF No. 58 at 3–4.)

On March 4, 2026, the Court issued an order granting in part Plaintiff's Motion for Sanctions (the "Sanctions Order"). (ECF No. 63.) In the Order, the Court found that Defendant's complete failure to respond to Plaintiff's Revised Interrogatories warranted compelled responses, in addition to a monetary sanction for Plaintiff's reasonable attorney fees and expenses. (*Id.* at 7.) Accordingly, the Court ordered Defendant to produce full and complete written responses to the Revised Interrogatories by March 27, 2026. (*Id.* at 9.) The Court further ordered Defendant and defense counsel, Mario P. Tafur and Phillip R. Berwish, to pay Plaintiff's reasonable expenses, including attorney's fees, caused by their failure to produce responses to the Revised Interrogatories. (*Id.*) The Court ultimately determined that Defendant and defense counsel were liable for payment of $22,543.00, which are the fees caused by Defendant's failure to respond to the Revised Interrogatories. (ECF No. 80.)[3]

In the Sanctions Order, the Court also addressed Plaintiff's argument that Defendant's failure to produce all nonprivileged documents responsive to RFP Nos. 11, 12, 14, and 26 and failure to produce a privilege log warranted sanctions under Federal

---

[3] Defendant failed to timely pay the awarded $22,543.00 by June 8, 2026, as ordered, requiring the Court to issue an Order to Show Cause. (ECF No. 93.) The payment was ultimately made, but not until July 20, 2026, well over a month late. (ECF Nos. 100, 104.)

Rule of Civil Procedure 37(b)(2)(A). (ECF No. 63 at 7.) The Court further addressed Plaintiff's argument that Defendant's method of production, *i.e.*, Defendant "produced only a small number of documents on a piecemeal basis, repeatedly re-produced the same limited materials in successive productions, failed to Bates-stamp documents, and did not produce responsive materials in native format where required, . . . substantially prejudiced Plaintiff's ability to litigate its claims and defenses." (ECF No. 58 at 4.) However, the Court determined that Plaintiff's motion did not "set forth sufficient facts for the Court to determine whether [Defendant] ha[d] produced sufficient documents responsive to RFP Nos. 11, 12, 14, and 26, or whether ESI 'that should have been preserved . . . is lost because [Defendant] failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" (ECF No. 63 at 8 (quoting Fed. R. Civ. P. 37(e)).)

Therefore, in lieu of sanctions related to Plaintiff's RFPs, the Court ordered both parties to "assign a unique, sequential bates number to all documents or ESI they produce during this litigation," and specifically ordered Defendant to "assign a unique, sequential bates number to all documents or ESI it has produced to date, on or before March 27, 2026." (*Id.* at 9.) The Court further ordered Defendant to produce all responsive materials in native format, to the extent it had not already done so. (*Id.*) Based on the foregoing, the Court denied without prejudice Plaintiff's request for terminating sanctions related to Defendant's document production. (*Id.* at 8–9.) However, the Court cautioned Defendant and its counsel that "should [Plaintiff] refile and prevail on said issues, additional sanctions, including the imposition of additional fees and expenses, will likely be imposed." (*Id.* at 10.)

**C. Special Master**

On April 10, 2026, the parties filed status reports to update the Court on Defendant's compliance with previous discovery orders. (ECF Nos. 68, 69.) Unfortunately, these status reports revealed that Defendant had still not fully complied with the Court's prior discovery orders. (*See id.*) On April 20, 2026, the Court held another Discovery Conference. (ECF No. 74.) During the Discovery Conference, the Court notified the parties of its intent to

appoint a special master pursuant to Federal Rule of Civil Procedure 53 to serve as a discovery referee regarding Defendant's compliance with the Sanctions Order. (ECF No. 75.) The parties agreed to the appointment of a special master. (ECF No. 76.) After being given an opportunity to suggest candidates for appointment, both parties left the selection up to the Court. (ECF Nos. 75, 76.) Therefore, the Court selected Bill VanDeWeghe at JAMS and appointed him to function as special master pursuant to Rule 53 to determine whether Defendant fully and completely complied with the Court's September 19, 2025 Order (ECF No. 42) and the Sanctions Order (ECF No. 63). (ECF No. 76.)

On May 14, 2026, the special master filed a report and recommendation ("R&R") with the Court. (ECF No. 81.) As set forth in the R&R, the special master "found that Defendant has not complied with the Court's orders for discovery." (*Id.* at 2.) Specifically, Defendant's responses to the Revised Interrogatories are "inconsistent and/or incomplete." (*Id.* at 2.) The R&R further identified the deficiencies in Defendant's document production. (*Id.* at 3–4.) The special master concluded that "Defendant does not appear to have made good faith, diligent efforts to preserve potential evidence, locate documents or ESI, or provide complete responses as ordered by the court." (*Id.* at 4.) "As a consequence, Plaintiff has not been able to identify or refute evidence that could be important for their case." (*Id.*) The special master recommended that "requiring Defendant to bear the costs for this process seems to be justified," as does the award of additional attorney's fees. (*Id.* at 4–5.) No party objected to the R&R. *See* Fed. R. Civ. P. 53(f)(2).

The Court held a Status Conference to discuss the R&R on May 22, 2026. (ECF No. 83.) Following the Status Conference, the Court ordered Defendant to complete its document production and serve an amended response to Plaintiff's Revised Interrogatories by May 26, 2026. (ECF No. 84.) Given Defendant's continued failure to fully respond to discovery or comply with the Court's orders, Plaintiff was also authorized to file a further motion for sanctions. (*Id.*) Plaintiff filed its Further Sanctions Motion on June 5, 2026. (ECF No. 85.)

///

**D. July 20 Order and Orders to Show Cause**

On July 20, 2026, the Court granted in part Plaintiff's Further Sanctions Motion. (ECF No. 103.) The Court adopted the special master's recommendation that (1) Defendant bear the costs for the special master, and (2) the Court award Plaintiff additional attorney's fees and costs related to Defendant's failure to comply with the Court's orders for discovery. (*Id.* at 32.) The Court further reopened discovery for the limited purpose of allowing Plaintiff to take the deposition of Charles Farris. (*Id.* at 33.) Lastly, the Court ordered Defendant to (1) produce native copies of all previously produced emails, including all attachments, and (2) serve a fourth amended response to Plaintiff's Revised Interrogatories that (a) is verified under oath by Defendant, (b) attaches all pages of the deposition transcripts cited in the answers with the relevant testimony underscored or highlighted, (c) includes Bates-number citations for all referenced documents, and (d) includes complete answers for each interrogatory. (*Id.* at 33–34.) Defendant was further ordered to file a Notice of Service of its fourth amended response attaching a copy of the response by August 7, 2026. (*Id.* at 34.)

On August 5, 2026, Defendant filed a Notice of Service attaching its fourth amended response without exhibits. (ECF No. 107.) Upon review of the response, the Court found that Defendant violated the July 20 Order by failing to attach all cited deposition pages, to include complete answers for each propounded interrogatory, to include Bates-number citations for all referenced documents, and to verify the interrogatories under oath. (ECF Nos. 107-1 at 2–18.) On August 10, 2026, Plaintiff filed a Notice of Defendant's Noncompliance identifying the above deficiencies. (ECF No. 108.) Plaintiff also stated that Defendant did not comply with the Court's directive to produce native copies of all previously produced emails, including all attachments. (*Id.* at 3–4.)

In its July 20 Order, the Court warned Defendant as follows:

> **The Court finds that Defendant's discovery conduct throughout this litigation has added unnecessary delay and costs and required significant judicial resources to address and attempt to rectify. As a result, if Defendant fails to TIMELY and FULLY comply with the foregoing, the**

> **Court will issue an Order to Show Cause why (1) Mario P. Tafur and Philip R. Berwish should not pay a monetary sanction pursuant to Local Civil Rule 83.1 in the amount of $5,000.00 each for their discovery conduct outlined herein; and (2) the Court should not recommend that the District Judge impose evidentiary sanctions at trial.**

(ECF No. 103 at 34.)

1. <u>August 12, 2026 Order to Show Cause</u>

Given the foregoing, on August 12, 2026, the Court issued an Order to Show Cause regarding Defendant's failure to comply with the Court's July 20 Order. (ECF No. 110.) The Court set a Show Cause hearing for August 19, 2026 and ordered Defendant to file a declaration showing cause why the Court "should not recommend that the District Judge impose the evidentiary sanctions previously requested by Plaintiff, including precluding Defendant from introducing any evidence of revenues, profits, advertising expenditures, or damages, and from supporting any claim or defense that depends on the discovery it has failed to produce, as well as an adverse inference jury instruction regarding Defendant's failure to preserve intake call recordings." (*Id.* at 3.) The Court further ordered Defendant's counsel, Phillip R. Berwish and Mario P. Tafur, to file declarations showing cause "why they should not pay a monetary sanction pursuant to Local Civil Rule 83.1 in the amount of $5,000.00 each for their discovery misconduct as outlined in the Court's July 20 Order." (*Id.* at 2–3.)

On August 17, 2026, Defendant and defense counsel timely filed their declarations. (ECF Nos. 113, 114, 115.) Upon review of Defendant's declaration, the Court noticed that the fourth amended response attached thereto as Exhibit A, which Defendant stated under oath was served on August 3, 2026, was different from the one Defendant attached to its August 5, 2026 Notice of Service. (ECF Nos. 113 at 1, 4–5; 113-1 at 18.) Specifically, the version of the fourth amended response attached to Defendant's declaration included a verification that was not previously present. (*Compare* ECF No. 107-1 at 18, *with* ECF No. 113-1 at 18.) The version of the fourth amended response attached to Defendant's declaration claims that Mr. Tafur signed and verified under penalty of perjury the fourth

amended response on August 3, 2026. (ECF No. 113-1 at 18.) The Court found it unclear which version was served on Plaintiff, but it appeared that the verification page was added for purposes of Defendant's declaration, backdated to August 3, 2026, and never served on Plaintiff. During the Show Cause hearing on August 19, 2026, Defendant did not explain this discrepancy to the Court's satisfaction.

2. August 20, 2026 Order to Show Cause

As Defendant failed to explain the discrepancies in declarations to the Court's satisfaction, the Court issued an additional Order to Show Cause (ECF No. 119) and continued the August 19, 2026 Show Cause hearing to August 26, 2026. (ECF No. 118.) On August 24, 2026, Defendant's counsel filed declarations attempting to explain the discrepancy in the verification. (ECF Nos. 120, 121.) Mr. Tafur stated that he signed a verification attesting to the truth of the answers contained in the fourth amended response on August 3, 2026, but, "[d]ue to an inadvertent error," he failed to attach the verification page to the electronic filing on August 5, 2026. (ECF No. 121 at 2.) Mr. Tafur further stated that, in response to the Court's August 12 Order to Show Cause, he "filed a declaration that attached as Exhibit A a complete copy of the Fourth Amended Response, including the verification page." (*Id.*) Mr. Tafur claimed he "did not realize that the date on the verification page had not been changed." (*Id.*) In his declaration, Mr. Berwish stated that he "has separately filed a Corrected 4th [Amended] Supplemental Answers to Plaintiff's Revised First Set of Interrogatories." (ECF No. 120 at 1.) However, he did not file a "Corrected" version with his declaration or separately.

On August 25, 2026, the following day, Mr. Berwish filed the "Corrected" version of Defendant's fourth amended response. (ECF Nos. 122, 125, 129.) This version included a verification page signed and dated by Mr. Tafur on August 24, 2026. (ECF No. 122-1 at 31.). This verification page was completely different from the verification attached to the August 17, 2026 declaration. (*Compare* ECF No. 113-1 at 18, *with* ECF No. 122-1 at 31.)

The Court held a second Show Cause hearing on August 26, 2026. (ECF No. 126.) Mr. Tafur appeared in person, but Mr. Berwish did not appear. (*Id.*) Mr. Berwish

subsequently filed a declaration stating that he intended to appear, but he used the login information from the prior Order to Show Cause, and not from the Order to Show Cause setting the August 26 hearing. (ECF No. 127.)

During the hearing, Mr. Tafur addressed his verification of Defendant's fourth amended response. He stated that when he signed the verification attached to Defendant's response to the initial Order to Show Cause, it should have been dated August 17. (*See* ECF No. 113-1 at 18.) The fact that it was dated August 3 was a clerical error and not an attempt to backdate the document. (*See id.*) Mr. Tafur did not address his August 24 claim that he had signed a verification page on August 3 but failed to attach it to Defendant's filing on August 5 "due to an inadvertent error in assembling the PDF for electronic filing." (*See* ECF No. 121 at 2.) He also did not address the inconsistency between this claim and his prior statements that when he signed the August 3 fourth amended response he believed he did not need to include a verification as his signature alone constituted a verification. (*See* ECF Nos. 107-1 at 18, 115 at 3.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). If a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders," including dismissing the action in whole or in part or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi). A finding that a discovery order has been violated "is entitled to considerable weight" because the presiding judge is "best equipped to assess the circumstances of the non-compliance." *Payne v. Exxon Corp*., 121 F.3d 503, 507 (9th Cir. 1997) (citation omitted).

District courts also have inherent authority to sanction parties or their lawyers for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *see also Wyle*, 709 F.2d at 589 ("[C]ourts have inherent power to dismiss an action when a party has willfully

deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."); *Grizzle v. County of San Diego*, 2022 WL 2706151, at *1 (S.D. Cal., July 12, 2022) ("Courts 'unquestionably' possess the inherent power to assess sanctions for disobedience of a court order.) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)).

Under both Rule 37 and the court's inherent authority, terminating sanctions should be imposed only in circumstances where the violation is due to "willfulness, fault, or bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). In determining whether terminating sanctions for noncompliance with discovery is appropriate, the court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)); *see also Leon*, 464 F.3d at 958 n.4 ("Although this five-factor test is usually used to review the propriety of Rule 37 sanctions, this same test was applied in [*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)] to review sanctions granted under a court's 'inherent power'.").

This is not a "mechanical" test but rather is intended to help a district court "think about what to do." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Terminating sanctions may be warranted "where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (citation omitted). "The most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1097 (citation and internal quotation marks omitted); *see also Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d

1051, 1057 (9th Cir. 1998) (when considering terminating sanctions, factors three and five "are decisive").

District courts in this Circuit apply the preponderance of evidence standard when considering sanctions. *See Smahi v. STMIcroelectronics, Inc.*, 825 F. Supp. 3d 1143, 1146 (N.D. Cal. 2026); *WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14-cv-1191 JLS (KSC), 2019 WL 6527951, at *10 (S.D. Cal. Dec. 4, 2019). On considering a motion for sanctions, a district court may make factual findings and assess the credibility of witnesses. *See Leon*, 464 F.3d at 958; *Valley Eng'rs Inc.*, 158 F.3d at 1054.

In addition, Local Civil Rule 83.1 authorizes sanctions against parties and counsel for noncompliance "with [the District's Local Rules], with the Federal Rules of Civil or Criminal Procedure, or with any order of the Court." CivLR 83.1(a). The Court is authorized to impose "any and all sanctions authorized by statute or rule or within the inherent power of the Court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions." *Id.* "A showing of bad faith is not necessary when the Court issues sanctions under . . . the Local Rules." *White v. Papoutis*, No. 16-cv-02694-JLS (DHB), 2017 WL 1020585, at *2 (S.D. Cal. Mar. 16, 2017) (citing *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001) (finding appropriate the district court's issuance of sanctions under Federal Rule of Civil Procedure 16 and the district court's local rules when the president of the plaintiff-business failed to appear at a mediation session and gave no prior notice)); *see also Mereu v. Delaware N. Companies Sportservice, Inc.*, No. 25-CV-00710-BJC-MMP, 2026 WL 1490135, at *11 (S.D. Cal. May 27, 2026); *Musgrove v. Hanifin*, No. 20-cv-614-JO-BLM, 2022 WL 17574075, at *2 (S.D. Cal. Dec. 8, 2022).

///

///

## III. DISCUSSION

### A. Current Status of Discovery

In the Further Sanctions Motion, Plaintiff sought sanctions under Rule 37 and the Court's inherent authority based on Defendant's violation of multiple court orders compelling the same discovery. (ECF No. 85.) The orders at issue concerned Defendant's responses to Plaintiff's Revised Interrogatories and RFP Nos. 11, 12, 14, and 26. (*See* ECF Nos. 42, 63, 84.) Plaintiff also sought sanctions for spoliation due to Defendant's failure to preserve ESI. In the Court's July 20 Order, the Court addressed the status and history of the disputed discovery at length, which is incorporated herein by reference. (ECF No. 103 at 9–20.)

As of the date of this Order, it appears Defendant has now, finally, served a complete verified response to the Revised Interrogatories that were first served well over a year ago. This compliance required the issuance of two Orders to Show Cause, the filing of two motions for sanctions, multiple Discovery Conferences and orders, and the appointment of a special master. Despite Defendant finally providing a response to the Revised Interrogatories that complies with the Court's orders, Plaintiff has not, however, received any intake call recordings, intake call transcripts (except for one call transcript), or intake call notes or summaries—all of which potentially could have contained evidence of confusion.[4]

This is largely due to Defendant's failure to preserve ESI, the timeline of which is as follows:

| | |
|---|---|
| February 19, 2025 | Plaintiff alerted the Defendant about the need to preserve ESI in a demand letter. |

[4] Plaintiff has also not received native copies of Defendant's emails with Mr. Farris, but Plaintiff has had the opportunity to depose Mr. Farris and request documents.

| | |
|---|---|
| June 13, 2025 | Plaintiff served RFPs seeking ESI and other documents. |
| July 14, 2025 | Plaintiff served interrogatories requesting that communications be identified, which would have included ESI. |
| July 31, 2025 | David Precilla, the person responsible for administrative matters in Defendant's office, testified during his deposition that he did not know what a "Litigation Hold" is, and that no special process was put in place to preserve evidence. |
| May 13, 2026 | During a conference call with the special master, Defendant's counsel could not confirm whether ESI documents exist, were deleted, or never existed. |

**B. Spoliation and Adverse Jury Inference**

In the Further Sanctions Motion, Plaintiff's spoliation argument focused primarily on the loss of the intake call recordings. (ECF No. 85-1 at 20–21.) Plaintiff argued that the Court "should, at a minimum, issue the adverse-inference jury instruction Plaintiff has requested with respect to the intake-call recordings and transcripts." (*Id.* at 23.) Specifically, Plaintiff requested a "jury instruction that Defendant failed to preserve intake call recordings during the pendency of this litigation despite its obligation to do so, and that the jury may infer that those recordings would have been unfavorable to Defendant, including as evidence of actual consumer confusion." (ECF No. 68 at 6; *see also* ECF No. 85-1 at 23.)

Rule 37(e) provides for sanctions for the spoliation of ESI that the party was under a duty to preserve. The duty to preserve evidence attaches when litigation is "pending or

reasonably foreseeable." *The Sunrider Corp. v. Bountiful Biotech Corp.*, No. SACV 08-1339, 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010), *adopted by* 2010 WL 4589156 (C.D. Cal. Nov. 3, 2010) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). In the Ninth Circuit, courts generally agree that this duty arises "[a]s soon as a potential claim is identified." *Apple, Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citations omitted). This duty extends to evidence that parties knew or should have known was relevant or may be relevant to future litigation. *See Kitsap*, 314 F.3d at 1001; *The Sunrider Corp.*, 2010 WL 4590766, at *29; *see also Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.").

Under Rule 37, "[s]anctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (quoting *United States v. Town of Colorado City, Ariz.*, No. 3:12-cv-8123-HRH, 2014 WL 3724232, at *7 (D. Ariz. July 28, 2014)). "While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3) restores the innocent party to their rightful litigation position." *Id.* (citation omitted). "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Id.* (citation omitted).

In its July 20 Order, the Court found that although Defendant was under a duty to preserve its intake call recordings and failed to take adequate steps to do so, there was no evidence at the time that Defendant intended to deprive Plaintiff of this information or that

Plaintiff was prejudiced by Defendant's failure. (ECF No. 103 at 22.) The Court focused on the fact Defendant collected and retained intake information in multiple formats and therefore such information has remained largely available to Defendant. (*Id.*) In addition, the Court relied on Defendant's principal and administrator testifying under oath that Defendant has received only one intake call evidencing confusion, and the fact a transcript of that call was produced to Plaintiff. (*Id.* at 24.)

However, during the August 19, 2026 Show Cause hearing, Plaintiff stated that although Defendant may have retained intake call information in multiple formats, none of the information had been produced. In response, Defendant argued that it did not produce such information because it was not relevant, *i.e.*, there was no evidence of confusion in the information.[5] Plaintiff further stated that there is no indication that Defendant started preserving the intake call recordings after explicitly being informed that it must do so by the special master and the Court. In response, Defendant seemed to admit it was not currently preserving such recordings.

Given this additional information, coupled with defense counsel's intentional misrepresentations to the Court and lack of candor, the Court finds that Plaintiff has sufficiently demonstrated that Defendant has acted with the requisite intent to deprive Plaintiff of the intake call recordings and that Plaintiff has been prejudiced by Defendant's failure to preserve. Despite ample notice of its ongoing duty to retain the intake call recordings, Defendant is not currently doing so. Moreover, Defendant has not produced its call intake information in any format, thus prejudicing Plaintiff. While Defendant claims it has only received one call from a client looking for Plaintiff, due to Defendant's conduct, Plaintiff is unable to test the veracity of that representation with any of the records that could have provided such evidence.

---

[5] RFP No. 7 requests "[a]ll documents and communications relating to actual, potential, or reported consumer confusion between [Defendant] and [Plaintiff]." (ECF No. 42 at 23.)

Accordingly, the Court finds that a jury instruction stating that Defendant failed to preserve intake call recordings during the pendency of this litigation despite its obligation to do so, and that the jury may infer that at least some of those recordings may have been unfavorable to Defendant, including as evidence of actual consumer confusion, is appropriate.

**C. Terminating Sanctions**

In the Further Sanctions Motion, Plaintiff argued that terminating sanctions are warranted for Defendant's willful defiance of the Court's September 19 and May 22 Orders, as well as the Sanctions Order. (ECF No. 85-1 at 16.) In the Court's July 20 Order, the Court found that terminating sanctions were unwarranted at that time. (ECF No. 103 at 32.) The Court still finds that consideration of the *Malone* factors weighs against terminating sanctions. The Court finds that with the additional recommendation of an adverse jury instruction and the deposition of Mr. Farris, the parties will have access to the true facts such that this case can be decided on the merits. *See Connecticut Gen. Life Ins. Co*., 482 F.3d at 1097 ("The most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.").

**D. Sanctions Against Counsel**

In the August 12 Order to Show Cause, the Court ordered Mr. Tafur and Mr. Berwish to each show cause in a written declaration why they should not pay a monetary sanction pursuant to Local Civil Rule 83.1 in the amount of $5,000.00 each for their discovery misconduct as outlined in the Court's July 20 Order. (ECF No. 110 at 3.) In the August 20 Order to Show Cause, the Court further ordered Mr. Tafur and Mr. Berwish to each show cause in a written declaration why they should not (1) pay an additional monetary sanction pursuant to Local Civil Rule 2.2 in the amount of $5,000.00 each, and (2) be referred to the Court's Standing Committee on Discipline, for violating their duties of candor and accuracy to the Court; and (3) as to Mr. Berwish, why the Court should not recommend to the District Court that his pro hac vice admission be revoked. (ECF No. 119 at 4–5.)

1. Violation of Duty of Candor

Counsel owes a duty of candor to the court. *See Malkeet Lnu v. Blanche*, 177 F.4th 1014, 1029 (9th Cir. 2026). Under the California Rules of Professional Conduct, "[a] lawyer shall not . . . knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Cal. R. Prof'l Conduct 3.3(a)(1); *see also* Cal. Bus. & Prof. Code § 6068(d) ("It is the duty of an attorney . . . to employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law"); *In re Domestic P'ship of Torres Campos & Munoz*, 118 Cal. App. 5th 1112, 1128–30 (2026). Moreover, as set forth in this District's Local Rules, "[w]e expect lawyers to be accurate in written communications intended to make a record," and "to honor and maintain the integrity of our justice system." CivLR 2.1(a)(2)(h), (3)(f).

Here, the Court finds that defense counsel violated their duty of candor to the Court. As set forth herein, the declarations filed by Mr. Tafur and Mr. Berwish in response to the Court's Orders to Show Cause and the statements made by Mr. Tafur and Mr. Berwish at the Show Cause hearings are internally inconsistent and contain multiple misrepresentations to the Court. Specifically, Defendant and defense counsel made the following representations to the Court with respect to the verification of its fourth amended response to the Revised Interrogatories:

| Date | Event/Representation | ECF No. |
|---|---|---|
| 8/5/26 | Defendant filed a "Notice of Service" and represented that it served the attached fourth amended response on Plaintiff on August 3, 2026. The attached fourth amended response served by Defendant was signed by Mr. Tafur but not verified under oath. | 107 |

| Date | Event/Representation | ECF No. |
| --- | --- | --- |
| | e. January 30, 2024 – Case Number: 23-O-23011 – Respondent: Raoul Severo – Complainant: Christopher Merrill<br><br>By: / s / _*Mario Taur*_________<br>Mario Tafur, Esq.Bulldog Law, P.C.<br>500 N. Central Avenue - Suite 610<br>Glendale, CA 91203<br>Phone: 818-649-3007<br>Email: mario@thebulldog.law<br>Berwish Direct: 800 547 8717<br>berwish@gmail.com<br>Philip R. Berwish, Esq. - Of Counsel | |
| 8/12/26 | Court issues Order to Show Cause regarding, *inter alia*, Defendant's failure to verify the fourth amended response under oath in accordance with the Court's July 20 Order and Federal Rule of Civil Procedure 33. | 110 |
| 8/17/26 | In its declaration filed in response to the August 12 Order to Show Cause, which was signed by Mr. Berwish, Defendant represented that it "served the attached fourth amended response on Plaintiff on August 3, 2026." The attached fourth amended response is signed by Mr. Tafur under oath and dated August 3, 2026.<br><br>Defendant also argues that "Mr. Tafur's signature as both counsel and principal of the responding party satisfies the Court's requirement that the response be verified under oath by Defendant. . . . That defect was cured by the timely production of Exhibit A bearing Mr. Tafur's signature."<br><br>[This version of the fourth amended response was not served on Plaintiff on August 3, 2026.]<br><br>**A. Verification Under Oath**<br>The Fourth Amended Response (Exhibit A) is the same set of supplemental answers previously provided, now verified by Mario Tafur as principal, sole officer, director, and shareholder of Defendant. It was timely served on August 3, 2026. Mr. Tafur's signature as both counsel and principal of the responding party satisfies the Court's requirement that the response be verified under oath by Defendant. The Court required verification "by Defendant" precisely<br>4<br><br>Case 3:25-cv-00551-AGS-GC Document 113 Filed 08/17/26 PageID.1516 Page ! of 13<br><br>because prior responses had been signed only by outside counsel. That defect was cured by the timely production of Exhibit A bearing Mr. Tafur's signature. | 113 |

| Date | Event/Representation | ECF No. |
| --- | --- | --- |
| | e. January 30, 2024 – Case Number: 23-O-23011 – Respondent: Raoul Severo – Complainant: Christopher Merrill<br><br>**VERIFICATION**<br><br>I, Mario Tafur, am the President, Chief Executive Officer, sole Director, and sole shareholder of Defendant Bulldog Law, P.C. I have read the foregoing Defendant's Fourth Amended Supplemental Answers to Plaintiff's Revised First Set of Interrogatories and know the contents thereof. The answers are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.<br><br>I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.<br><br>Executed on August 3, 2026, at Glendale, California.<br><br>By: / s / _*Mario Taur*_<br>Mario Tafur, Esq.Bulldog Law, P.C.<br>500 N. Central Avenue - Suite 610<br>Glendale, CA 91203<br>Phone: 818-649-3007<br>Email: mario@thebulldog.law<br>Berwish Direct: 800 547 8717<br>berwish@gmail.com<br>Philip R. Berwish, Esq. - Of Counsel | |
| 8/17/26 | Mr. Tafur filed a declaration in response to the August 12 Order to Show Cause stating: "With respect to verification, I signed the Fourth Amended Response as 'Mario Tafur, Esq., Bulldog Law, P.C.' in my capacity as the sole principal, officer, and authorized representative of the Defendant corporate entity. As the only person with authority to bind the Firm, my signature constitutes verification by Defendant. The Court required verification 'by Defendant' precisely because prior responses had been signed only by outside counsel. That defect was cured. The accompanying Proof of Service was executed by Defendant's paralegal, Jennifer Munguia, under penalty of perjury. **To the extent the Court finds that additional formal verification language under penalty of perjury is required, Defendant is prepared to immediately cure any such technical deficiency by serving a verified declaration or amended verification page.**" (emphasis added)<br><br>[This statement acknowledges that the fourth amended response served on August 3, 2026 was not signed under oath by Mr. Tafur.] | 115 |
| 8/19/26 | Show Cause hearing held. Mr. Tafur stated that the fourth amended response served on Plaintiff on August 3, 2026 was not signed under penalty of perjury. He further stated that on August 17, 2026, Defendant filed a version of its fourth amended response with the penalty of perjury language added to satisfy the Court.<br><br>Mr. Berwish acknowledged that the August 3, 2026 filing did not have the verification language. He claimed that it was not required | 118 |

| Date | Event/Representation | ECF No. |
|---|---|---|
| | under Rule 11. However, in an abundance of caution, Defendant resubmitted the verification with the proper language on August 17, 2026. Mr. Berwish confirmed that August 17, 2026 version was not served on Plaintiff on August 3, 2026, despite Defendant's representation in its August 17, 2026 declaration that it had been served on that date.<br><br>[Defense counsel acknowledged that the verification was added on August 17, 2026, but did not address why the verification resubmitted on August 17, 2026, is dated August 3, 2026 and Defendant claimed to have served the verification on August 3, 2026.] | |
| 8/20/26 | The Court issues an Order to Show Cause regarding Defendant's lack of candor regarding the verification of its fourth amended response. | 119 |
| 8/24/26 | Mr. Berwish filed a declaration in response to the August 20 Order to Show Cause stating that "[t]he original submission failed to have the verification signed under oath and, when it was discovered, it was corrected by resubmitting with the proper language. In the haste to correct the oversight the date was not changed but there was no intent to misrepresent the facts or to deceive the court."<br><br>Mr. Tafur filed a declaration in response to the Order to Show Cause stating: "On or about August 3, 2026, our office prepared Defendant's [fourth amended response]. On that same date, I signed a verification under penalty of perjury attesting to the truth of the answers contained in the Fourth Amended Responses.<br><br>On August 5, 2026, Defendant filed a Notice of Service attaching the Fourth Amended Responses (ECF No. 107). Due to an inadvertent error in assembling the PDF for electronic filing, the signed verification page was omitted from the attachment to the Notice of Service. The body of the responses themselves was included.<br><br>On August 17, 2026, in response to the Court's prior Order to Show Cause issued August 12, 2026 (ECF No. 110), I filed a declaration that attached as Exhibit A a complete copy of the Fourth Amended Responses, including the verification page. The purpose of attaching the complete, verified version was to correct the prior omission of the verification page from the August 5 Notice of Service, not to create a new or different document, and not to mislead the Court.<br><br>I did not realize that the date on the verification page had not been changed, or that the version attached to the August 5 Notice of Service differed from the version attached to my August 17 | 120, 121 |

| Date | Event/Representation | ECF No. |
|---|---|---|
| | declaration, until the Court raised the discrepancy during the Show Cause hearing on August 19, 2026."<br><br>3. On or about August 3, 2026, our office prepared Defendant's Fourth Amended Responses to Plaintiff's Revised Interrogatories (the "Fourth Amended Responses"). On that same date, I signed a verification under penalty of perjury attesting to the truth of the answers contained in the Fourth Amended Responses.<br>4. On August 5, 2026, Defendant filed a Notice of Service attaching the Fourth Amended Responses (ECF No. 107). Due to an inadvertent error in assembling the PDF for electronic filing, the signed verification page was omitted from the attachment to the Notice of Service. The body of the responses themselves was included.<br><br>[Mr. Tafur claims that he signed a verification form on August 3, 2026, but failed to attach it. This is in direct contradiction with his prior statements that he thought his initial signature was sufficient under Rule 11 and he corrected the error on August 17, 2026.] | |
| 8/25/26 | Final version of Defendant's fourth amended response filed with Mr. Tafur verifying the response under oath on August 24, 2026.<br><br>**VERIFICATION**<br>I, Mario Tafur, am the President, Chief Executive Officer, sole Director, and sole shareholder of Defendant Bulldog Law, P.C. I have read the foregoing Defendant's Fourth Amended Supplemental Answers to Plaintiff's Revised First Set of Interrogatories and know the contents thereof. The answers are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.<br>Executed on August 24, 2026, at Glendale, California.<br>By: / s / _*Mario Tafur*_<br>Mario Tafur, Esq.Bulldog Law, P.C.<br>500 N. Central Avenue - Suite 610<br>Glendale, CA 91203<br>Phone: 818-649-3007<br>Email: mario@thebulldog.law<br>Berwish Direct: 800 547 8717<br>berwish@gmail.com<br>Philip R. Berwish, Esq. - *Of Counsel* | 122, 125, 129 |
| 8/26/26 | During the Show Cause hearing, Mr. Tafur addressed his verification of Defendant's fourth amended response. He stated that when he signed the verification attached to Defendant's response to | 126 |

| Date | Event/Representation | ECF No. |
|---|---|---|
| | the initial Order to Show Cause, it should have been dated August 17, 2026. The fact that it was dated August 3, 2026 was a clerical error and not an attempt to backdate the document.<br>[Mr. Tafur does not address the statements in his declaration that he originally signed a verification on August 3, 2026, but it was not attached due to a clerical error.] | |

While defense counsel argue that these discrepancies and misrepresentations were mere "formatting and technical issues" and there was no intent to deceive the Court, the Court disagrees. The statements were not typographical errors. Rather, based on all the circumstances, the Court can only infer they were knowing misrepresentations to the Court intended to cover up their failures to comply. *See Malkeet Lnu*, 177 F.4th at 1031 ("The nature of the errors we have identified, and the lack of any plausible alternative explanation, further support the inference of actual knowledge."). Accordingly, the Court sanctions Mr. Berwish and Mr. Tafur, individually and severally, each $2,000.00 under the Court's inherent authority and Local Rule 83.1(a) for violating their duty of candor to the Court.

2. <u>Violation of the Court's July 20 Order</u>

The Court further finds it appropriate to sanction Mr. Berwish and Mr. Tafur pursuant to Local Civil Rule 83.1 and the Court's inherent authority further for violating the Court's July 20 Order. The Court gave Defendant and its counsel, which in this case are one and the same, the benefit of the doubt in the July 20 Order, giving Defendant a final opportunity to correct several of its discovery failures. However, Defendant once again failed to comply with the Federal Rules of Civil Procedure and with an order of this Court.

The Court emphasizes that this was not a one-off, unique event, but rather a pattern and practice in this case. For example, Defendant completely and inexplicably failed to respond to the Revised Interrogatories by the initial August 13, 2025 deadline set by Federal Rule of Civil Procedure 33 and then compounded that error by failing to respond by the Court-ordered deadline of October 3, 2025. (*See* Bruss Decl. ¶3; ECF No. 42.) Defendant did not bother to respond to the Revised Interrogatories until after the Court

issued the Sanctions Order on March 4, 2026, which ordered compliance by March 27, 2026. (*See* Bruss Decl. ¶3; ECF No. 63.) Defendant served its first response to the Revised Interrogatories on March 27, 2026, seven months after they were due, and its second response on May 11, 2026. (Bruss Decl. ¶¶ 3, 10.) As set forth above, both were deficient.

During a May 11, 2026 hearing, the special master found the second response "to be inconsistent and/or incomplete." (ECF No. 81 at 2.) The special master also found it "difficult to follow the sequence of events and discussions that allegedly took place." (*Id.*) Incredibly, during the hearing, Mr. Berwish represented that "his client had not yet reviewed the interrogatory responses sent on May 11, 2026, despite bearing Mr. Tafur's s/ signature." (Bruss Decl. ¶ 11.) The special master stated in his R&R that "Defendant does not appear to have made good faith, diligent efforts to . . . provide complete responses as ordered by the court." (*Id.* at 4.) On June 5, 2026, Plaintiff pointed out in its Further Sanctions Motion that Defendant had failed to verify its response to the Revised Interrogatories pursuant to Rule 33. (ECF No. 85-1 at 17.) It still took Defendant an additional three months, the July 20 Sanctions Order, and two Orders to Show Cause to serve a verified, complete set of responses to the Revised Interrogatories. In the process, as set forth above, defense counsel compounded its multitude of failures by making misrepresentations to the Court and failing to fully comply with each Court order.[6]

Based on the foregoing, the Court finds that non-monetary and monetary sanctions intended to vindicate the Court's authority and deter future conduct are appropriate. *See*

---

[6] Moreover, as set forth above, Defendant did not comply with the Court's ENE Order, necessitating an Order to Show Cause. (ECF No. 15.) Defendant also failed to comply with the Court's Order setting the Mandatory Settlement Conference ("MSC"), first by failing to timely lodge its MSC brief and participant information, and then by failing to appear at the MSC with a party representative with full settlement authority. (ECF Nos. 57, 60.) Additionally, Defendant failed to timely pay a Court-ordered sanction, which led the Court to issue another Order to Show Cause. (ECF No. 93.)

*Mereu*, 2026 WL 1490135, at *14 (citing *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 641 (5th Cir. 2008) ("[D]istrict courts retain the ability to police their own rules through various punitive sanctions mechanisms, including issuing written opinions that describe attorney misconduct. Such admonitions play an important role in discouraging bad behavior by litigators . . . .")). Thus, the Court finds punitive sanctions appropriate. *See HM Elecs., Inc. v. R.F. Techs., Inc.*, 171 F. Supp. 3d 1020, 1027 (S.D. Cal. 2016) ("[I]f the sanction primarily aims to vindicate the authority of the court by punishing the offending party, the sanction is punitive.").

Pursuant to Local Civil Rule 83.1 and the Court's inherent authority, the Court sanctions Mr. Berwish and Mr. Tafur an additional $1,250.00 each for violating the Court's July 20 Order.

Pursuant to Local Civil Rule 2.2(e), the Court further refers Mr. Tafur to the District's Standing Committee on Discipline for consideration of his conduct in this case, specifically his violations of the Court's orders, the Federal Rules of Civil Procedure, and his duty of candor to the Court, so the Committee may evaluate the propriety of Mr. Tafur's continued admission to practice in the Southern District of California and to determine whether additional discipline is appropriate. This sanction is both necessary and appropriate considering the magnitude of Mr. Tafur's conduct at issue.

Lastly, the Court finds it appropriate to recommend that Mr. Berwish's pro hac vice admission be revoked for purposes of this case. Whether to grant or revoke pro hac vice status is discretionary. *See United States v. Ensign*, 491 F.3d 1109, 1116 (9th Cir. 2007) (citing *Gallo v. U.S. Dist. Ct. For Dist. of Arizona*, 349 F.3d 1169, 1185 (9th Cir. 2003)). The Court's inherent authority includes "the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005) (revoking pro hac vice status based on its power to control admission to its bar and to discipline attorneys before it); *Brooks v. Motsenbocker Advanced Devs., Inc.*, No. 07CV0773-MMA (NLS), 2009 WL 10671895, at *3 (S.D. Cal. Mar. 2, 2009) (upholding revocation of pro

hac vice status where counsel misrepresented the parties' and the court's actions, engaged in excessive and abusive motion practice, insulted the intelligence of the court and violated the local rule prohibiting an attorney from degrading or impugning the integrity of the court). "Pro hac vice counsel, once admitted, are entitled to notice and an opportunity to respond before being disqualified and having their status revoked." *Cole v. U.S. Dist. Ct. For Dist. of Idaho*, 366 F.3d 813, 822 (9th Cir. 2004).

Here, Mr. Berwish was given notice and an opportunity to respond by way of the Court's August 20 Order to Show Cause and August 26 Show Cause hearing. As set forth above, Mr. Berwish missed virtually every deadline in this case, failed to advise his client to preserve evidence, and failed to diligently engage in discovery in good faith. Moreover, as previously determined, Mr. Berwish violated his duty of candor to the Court. Remarkably, after being on notice of the serious issues with his failure to comply with the Court's orders, Mr. Berwish failed to appear for the August 26 Show Cause hearing because he apparently did not read the order that provided the Zoom information for that hearing. (ECF No. 127.) Instead, Mr. Berwish informed the Court by declaration after the hearing that he had called in using the August 19 Show Cause hearing Zoom information. (*Id.*) The Court finds Mr. Berwish's continued admission for purposes of this case would impair the integrity of this case moving forward. Accordingly, the Court recommends that Mr. Berwish's pro hac vice status be revoked for purposes of this case.

**E. Additional Attorney's Fees and Costs**

In addition to the foregoing sanctions, pursuant to Local Civil Rule 83.1 and the Court's inherent authority, the Court awards Plaintiff additional attorney's fees and costs related to Defendant's failure to comply with the July 20 Order. Specifically, Plaintiff is awarded the fees and costs incurred by Plaintiff in responding to Defendant's failure to comply with the July 20 Order, including, but not limited to, preparing for and attending the Show Cause hearings.

///

///

## IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Pursuant to Local Civil Rule 83.1 and the Court's inherent authority, Philip R. Berwish and Mario P. Tafur, individually and severally, shall **EACH** pay $3,250.00 to the Miscellaneous Fines, Penalties and Forfeitures, Not Otherwise Classified, fund of the United States Treasury no later than **September 25, 2026**.
2. Philip R. Berwish and Mario P. Tafur must **EACH** file a declaration of compliance within three business days of payment attesting to payment in the ordered amount to the Court.
3. Pursuant to California Business & Professions Code section 6068(o)(3), Mario P. Tafur **SHALL** report the sanctions imposed by this Order to the California State Bar no later than **October 2, 2026**.
4. The Court **REFERS** Attorney Mario P. Tafur to the Southern District of California's Standing Committee on Discipline pursuant to Local Civil Rule 2.2(e) to investigate Mr. Tafur's fitness to practice law in this District and determine whether additional sanctions are appropriate.
5. The Court further **ADMONISHES** Philip R. Berwish and Mario P. Tafur, as well as the law firm Bulldog Law, P.C., that they MUST comply with the applicable Federal Rules of Civil Procedure, Southern District of California's Local Civil Rules, the undersigned's Chambers Rules, the District Judge's Chambers Rules, as well as all court orders.
6. The Clerk of the Court is directed to serve a copy of this Order on the State Bar of California.
7. No later than **September 21, 2026**, Plaintiff shall file declaration(s) detailing the fees and costs incurred by Plaintiff in responding to Defendant's failure to comply with the July 20 Order, including, but not limited to, preparing for and attending the Show Cause hearings.

In addition, based on the foregoing, the Court **RECOMMENDS** that the District Judge issue an Order:

1. approving and adopting this Report and Recommendation;
2. finding Defendant had a duty to preserve its intake call recordings during the pendency of this litigation and intentionally spoliated this evidence to deprive Plaintiff from obtaining and using this information;
3. giving an adverse inference instruction at trial that the jury may infer that at least some of Defendant's intake call recordings may have been unfavorable to Defendant, including as evidence of actual consumer confusion, with the specific language of the instruction to be decided by the District Judge at the pretrial conference; and
4. revoking the pro hac vice admission of Mr. Berwish for purposes of this case.

**IT IS HEREBY ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party to this action may file written objections to the Report and Recommendation with the Court and serve a copy on all parties no later than **September 22, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that if objections are filed, any reply is due by **October 6, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: September 8, 2026

Hon. Guillermo Cabrera
United States Magistrate Judge